FED GRAY v. STATE OF MISSISSIPPI.

[43 South., 289.]

CRIMINAL LAW AND PROCEDURE.  *Homicide.  Trial.  ·Remarks of court.
Argument.*

On appeal from a conviction of manslaughter prejudicial error
cannot be predicated of the fact:—

(a) That the trial court inquired in the hearing of the jury, it
being proposed to introduce in evidence a garment worn by de-
fendant when arrested, "How could the witness know it was not
chicken blood on the garment?", the same not then having been
identified and there being no evidence that it was bloody, or if
bloody, where the blood came from, especially where the de-
fendant subsequently testified that the garment was his and
that it was stained with decedent's blood; or

(b) That the prosecuting attorney inadvertently made certain
memoranda on the back of an instruction for the state which the
jury had while deliberating on the case, it appearing that the
jurors did not read the memoranda; or

(c) That the prosecuting attorney in his argument said—there
being evidence of which to predicate the statements—that the
accused was as guilty as he could be; that he was a bloody
assassin; that accused was an athlete and sprang to his feet
and shot deceased in the back of his head ·and then shot another
person; that accused murdered decedent in cold blood, and
called on the jury whether they would put a stop to the homi-
cides of which three or four had been committed within the
last few months by · negroes, and that the proof showed that
accused had not lived with his wife for two years.

FROM the circuit court of Leake county.

HON. JAMES R. BYRD, Judge.

Gray, the appellant, a negro, was indicted for manslaughter,
the killing of one Newton Wallace, a man of color; was tried,
convicted of manslaughter and sentenced to the penitentiary
for ten years, and appealed to the supreme court.  The facts
are stated in the opinion of the court.

*McMillan & Howard,* and *O. A. Luckett,* for appellant.

Appellant, a poor and helpless negro, was entiled to a fair and impartial trial, and to the same consideration of his interests as would be due to any other man, white or black; and his case should not have been prejudiced in the minds of the jury by the remarks of the presiding judge, which were unfair, uncalled for and unreasonable. A casual consideration will show that these remarks were calculated to prejudice the minds of the jury against the defendant, and to cast a doubt and suspicion over his defense.

No one denies that it is reversible error for the court to charge a jury on the weight of the evidence. Yet, the abrupt remarks of the judge of the trial court, made in the presence of the jury and during the trial of the case, and in reference to the unworthiness of certain testimony, would have a more damaging effect than if the judge had openly charged the jury by written instruction on the weight of the evidence. The average jury considers that the court's every statement is most important; that the judge is infallible. It makes no difference what the intention of the lower court was in making the remarks, the effect on the jury was to the prejudice of the defendant's interests. No subsequent explanation or instruction was given to the jury as to their not regarding these remarks, hence the error remained, without correction, throughout the remainder of the trial.

In support of our position as to the remarks of the court in the presence of the jury, we cite the case of *Montgomery* v. *State,* 85 Miss., 330, 37 South., 835, where, in the court's opinion, it is stated as follows: "Underholds and blows beneath the belt should never charactcrize trials, especially trials involving life or liberty. A court should so deport itself that no juror nor bystander can surmise its views of the facts. An unbiased jury alone should pass upon the facts."

The lower court erred in permitting Hon. Presley Groves, associate counsel for the prosecution, to make damaging and

unwarranted statements in his argument of the case before the jury. The jury alone are the sole judges of the evidence, and, we submit, counsel for the state should never be allowed to thrust their own opinions as facts before the jury, in arguing the case, especially when there is no evidence of which to predicate the remarks. There is no necessity to refer to authorities to show that arguments of counsel should not extend to things without the record. The learned associate counsel for the prosecution, in the closing argument, charged the defendant with "being as guilty as he could be," characterized him as "a bloody assassin," and further dragged in before the jury the blood-boiling race issue for consideration, calling upon the jury to know if they would not put a stop to the numerous homicides which were constantly occurring in the neighborhood, and which were committed by negroes. His remarks, in substance, were, that defendant was a bloody assassin, whose race was murdering people all over the country; that three or four people in the neighborhood had been murdered within the past three or four months, and for this reason the defendant should be found guilty. It was unfair to the defendant to have the outrages committed by others of his race, heaped upon him by the statements of the counsel for the prosecution.

In *Martin* v. *State,* 63 Miss., 505, it was held by this court that the unsworn statements of counsel against the accused, which if offered as evidence would have been incompetent, constituted reversible error.

*R. V. Fletcher,* assistant attorney-general, for appellee.

It was made a ground of motion for a new trial, and here assigned for error, that the judge of the lower court made some remarks in the presence of the jury about the possibility of blood upon appellant's shirt being chicken blood. This remark was made in ruling upon the competency of a witness' testimony in regard to the shirt. It was before the shirt was identified, in fact before it was shown that there was blood upon

the shirt, or from where the blood came. The remark meant nothing except that the court's view of the law was that the presence of the blood must be accounted for and explained. Afterwards when the defendant had testified as to his ownership of the shirt, and that the blood came from the deceased, the witness was permitted to testify, and the shirt was introduced in evidence. The court's remarks cast no reflection upon defendant's testimony; it was merely an illustration used to demonstrate the incompetence of the testimony at that stage of the proceedings.

Complaint is made by appellant because a pencil memorandum was made at the bottom of the state's first instruction, by Mr. Presley Groves, one of the attorneys prosecuting the case. The memorandum was made inadvertently on the sheet of paper containing the instruction, by Mr. Groves, before he noticed that the instruction was written thereon. Inasmuch as every solitary juror testified, on the motion for a new trial, that he had not noticed or read the memorandum, it is clear that no harm resulted. The point is without merit.

Objection is made by appellant to the argument of counsel for the state. But, it is submitted, it is not reversible error for an attorney to declare in his argument to the jury that the defendant is guilty. He has a right to express his opinion. 2 Ency. Pl. & Pr., 726. It is shown by appellant, in his motion for a new trial, that Mr. Groves, of counsel for the prosecution, stated to the jury in his argument that the appellant had not lived with his wife for two and a half years. But there can be no legal contention that this constitutes reversible error, for the record shows that this statement of Mr. Groves' was the truth. Besides, the objection of counsel for appellant to this statement seems to have been sustained by the court.

As regards the strong language used by associate counsel for the state in his argument, it is submitted that this did not constitute reversible error. "Just and fierce invective when based

upon the facts in evidence, and all legitimate inferences therefrom, will not be discountenanced by the courts." 2 Ency. Pl. & Pr., 747.

WHITFIELD, C. J., delivered the opinion of the court.

We examined this case very carefully once before, and affirmed the judgment without writing. Upon application of one of the learned counsel for appellant the judgment was vacated and time given said counsel to file a written brief. We have read the brief carefully, and again gone through the record in the light of the argument made in that brief, and we remain of the opinion that there is no reversible error in the record. Certain objections to the action of the circuit judge, and also of prosecuting counsel, in the course of the trial, are so earnestly pressed upon us that we avail ourselves of this opportunity of making some observations in respect to assignments of this kind which seem imperatively called for, not because of the assignments of that character in this record only, but because of the astonishingly frequent recurrence of similar assignments of error in a majority, I think we may safely say, of felony cases appealed to this court.

To deal, first, with the facts in this record out of which these assignments grow. A witness, Isham Shearer, having been introduced and asked a few questions, the appellant asked to introduce to the jury the shirt Fed Gray (appellant) had on when Mr. Shearer arrested him and carried him to the jail, which shirt was supposed to be at the jail house when the witness was testifying. "Objection. The court remarked, 'How would the witness know it wasn't chicken blood on the shirt?' And this was said in the hearing of the jury, to which the defendant excepted then and there." We have given the exception in the very language of the record. This remark of the court was made before the shirt had been identified, and before it had been shown that there was any blood on the shirt, or where the blood came from. The court simply meant that the

blood on the shirt should be accounted for and explained. The appellant later testified that it was his shirt, and that the blood came upon the shirt from the deceased, and the appellant was then permitted to testify about the matter, and the shirt was produced in evidence before the jury. Most manifestly there could not possibly have arisen from this anything to the prejudice of the appellant.

The motion for a new trial in its fourth ground set up the fact that Hon. Presley Groves, prosecuting attorney for the state, made certain memoranda on the first instruction for the state, and that the instruction went to the jury with the memoranda on it. This assignment of error is pressed here, although each juror was sworn, and without exception testified, each for himself, that he had not read the memoranda, and did not know anything about it. Does it need any argument to show that the jury could not have been mislead by that of the existence of which, even, they had no knowledge?

Many of the grounds in the motion for a new trial assail the argument made by the same counsel for the state. For example, it is objected that he said, "He is as guilty as he can be"; "called him a bloody assassin"; "that he said that the appellant was an athlete, and sprang to his feet, and shot Newton Wallace in the back of the head while he was standing, and then shot Felix Jones straight through from the front while he was standing, the ball going through him"; that he said "that the defendant murdered Newton Wallace in cold blood, and that he called on the jury whether they will put a stop to these homicides, and that there had been three or four in his neighborhood within the last few months, committed by negroes; and "that the proof in the case in the justice's court showed that the defendant had not lived with his wife for two and a half years or more," etc. So far as the observation about his not having lived with his wife for two and a half years is concerned, the testimony in this record shows that that was true. It is also true that Jones was shot in the same diffi-

culty. So far as the expression of opinion of the learned counsel that the defendant was guilty is concerned, he certainly had the right to state his opinion from the evidence. It is said in 2 Ency. of Pleading & Prac., p. 747, that "just and fierce invective, when based upon the facts in evidence and all legitimate inferences therefrom, is not discountenanced by the courts." Were Burke and Sheridan, in the impeachment of Warren Hastings, to weigh impassioned invective, warranted by the evidence, in the scales of quibbling nicety? Has any one who ever read Mr. Webster's prosecuting speech in the Knapp trial, or Mr. Prentiss' great speech in behalf of Judge Wilkinson, thought the splendid diction and the marvelous imaginery and the terrible invective not fully justified by the facts? One cannot help being reminded of William Wirt's opening remark in the prosecution of Aaron Burr to the effect that Burr seemed to think that he (Mr. Wirt) as prosecuting counsel should deal with him as if he were "a courtier in a drawing-room." Is it possible that any sound objection can be based on any of the language of the learned prosecuting counsel in this case? District attorneys and prosecuting counsel representing the state, so long as their addresses to the jury are based upon and justified by the evidence in the cause, are not to have an indignation justly aroused against horrible crime iced down to the freezing point by too frigid a care, lest they transgress in the use of heated language. Fancy and reason may well have their full and legitimate play, however splendid the flights of the one, and however terrible the logic of the other, if only that fancy and that reasoning exercise themselves within the scope warranted by the testimony in the case. There are cases which call for invective—fierce invective. There are cases in which all the capacity of a really great orator and great lawyer may be exerted to its fullest proper limit, and yet the defendant have no right to complain, because the facts in the case may show a crime so horrible as utterly to shock the consciences of all who may

have heard the evidence. In such cases great latitude may well be allowed in the interest of justice, always seeing to it that what is said is warranted by the testimony in the case.

The frequency with which these assignments of error recur would seem to indicate that the learned counsel who represent defendant have forgotten that the twelve men who sit in the jury box represent the average intelligence and the average integrity of the counties which they respectively serve. Most surely, if the laws with regard to the selection of juries have been themselves honestly and intelligently followed, juries do always represent the average intelligence and the average integrity of their counties. They do not sit as dummies in the jury box. They are to be dealt with by the judge of the lower court and by this court as men who appreciate and understand the oaths which they took as jurymen, as men having and exercising average intelligence and average integrity, capable mentally of understanding the written instructions of the court and the argument of counsel, and capable morally of having the courage and firmness to draw their own conclusions for themselves from the law as written and from the testimony as delivered, without reference to improper appeals from counsel on either side. The administration of justice is a pre-eminently practical thing. Far too many reversals are occurring all over the land in criminal trials on technical grounds. Supreme courts should not sit in the trial of causes as if in "quest of error," but rather with the purpose of administering between the state and the defendant exact and impartial justice, affirming the results reached in the courts below where that result is plainly and manifestly right on the whole record, and not reversing cases and subjecting counties to the expense of repeated new trials, giving to defendants who ought to be punished all opportunities for continuance and the various other means of escaping justice. Reversals on any grounds that do not look at the case as a completed case on the whole record, that are not soundly taken and seasonably presented, should

never be had.  And if these remarks are applicable to the juries of the country as regards the observations of counsel in the course of their arguments, how much more true are the same principles applicable with respect to the action of the learned circuit judges of this state!

We have recently had quite a number of cases in which all sorts of exceptions have been taken to the action of learned circuit judges in this district and that.  One would almost suppose, from the frivolous character of some of these exceptions (not meaning, however, to characterize the ones in this case as frivolous), that the circuit judge himself must sit in his seat as if in a straight-jacket, and square his every word and act in the course of a trial with infinite precision to the nicety of a hair, lest he should do something or say something which could be seized upon by a thoroughly guilty defendant as a last hope of reversal.  The learned circuit judges of this state occupy positions of great dignity, great authority, and great power in the communities in which they preside.  They are entitled to the respect and reverence of their brethren of the bar, and may justly look to them as officers of the court to aid and uphold them in the vigorous enforcement of the criminal laws of this state, to the end that we may have established in this commonwealth good order everywhere.  True, they have bounds which they cannot pass in their conduct in the trial of causes; but equally true is it that no frivolous, captious, caviling objections should be indulged in by counsel for defendants—no seizing upon utterly immaterial things said or done by the learned circuit judge in the trial of causes, unless those things said or done present to the reasonable mind, honestly weighing the situation, good  ground for exception. We are not to be understood as minimizing the rights of a defendant at the bar to avail himself of any substantial infringement of his rights by prosecuting counsel in their argument, or by circuit judges in any part of their dealing with the case; but we are to be understood as emphatically reprobat-

ing the vicious tendency, manifest in so many cases recently brought to this court, to seize upon observations of counsel for the state that have utterly no influence upon the jury, and even upon the doings and sayings of the circuit judge which by no possibility could have in the slightest degree infringed the constitutional and statutory rights of a defendant. This we do censure, and this we do hope to see end at once. Most especially do we desire to say that these observations are not made with particular respect to the instant case. We have merely used the instant case as an occasion for making these observations applicable, not to it particularly, but to the class of cases and the class of objections of which it forms one instance. We may say of the present case that it is far less open to the criticisms which we have been making than very many other cases that we have recently disposed of, and we have forborne from time to time to make just this line of observation in the hope that this delirium of objections would abate. But we have been disappointed. On the contrary, they have increased, and the object of making these remarks now is, in so far as we can, to put a summary end to this trifling and captious caviling, wholly unwarranted by the various records which we have examined. Let it be remembered, once for all, that if this plan of objection was to prevail, the spectacle would actually be presented of this tribunal sitting here to try, not whether the defendant in a cause had been properly found guilty of the charge against him, but whether the district attorney or the circuit judge had been guilty of some supposed grievous offense. We try, not the circuit judge, and not the district attorney, but the defendant.

*Let the judgment be affirmed.*