STONE-LOWE COTTON CO. *v.* WEIL BROS.

[91 South. 859. No. 22510.]

1. TRIAL. *In action involving question as to what was the contract, the court's amending the verdict by inserting the amount shown due by undisputed evidence is not error.*

Where the issue between the plaintiff and the defendant is whether the contract on which plaintiff declared is the real contract or whether the real contract is one set up by the defendant, the contract not being in writing, and the jury accepts the plaintiff's version of what the contract was, and where the plaintiff's

evidence as to the grade and weight of the cotton involved in the contract is not disputed in the evidence, and the jury finds for the plaintiff, not specifying the amount in their finding, it is not error for the court to put the verdict in form by inserting the amount shown by the undisputed evidence to be due the plaintiff; his version of the contract being adopted by the jury in its finding as to the contract.

2. APPEAL AND ERROR. *Where there was no dispute as to grades and weights, instruction to find for plaintiff if the grades and weights did not come up to the contract was harmless.*

It is not reversible error in such case to instruct the jury "that if you believe from the preponderance of the evidence in the case that Weil Bros. bought the cotton involved in this suit from the defendants on the contract prices, the contract grades, and the contract weights as set out in plaintiff's declaration, and that said cotton failed to come up to said contract either in grades or weights, or both, then you will find for the plaintiff's and assess their damages the amount sued for," there being no dispute as to the facts as to grades or weights as testified to by the plaintiff, the latter part of the instruction is harmless error.

APPEAL from circuit court of Lee county.

HON. C. O. LONG, Judge.

Suit by Weil Bros. against the Stone-Lowe Cotton Company. Judgment for plaintiff, and the defendant appeals. Affirmed.

*Robinson & Thomas,* for appellant.

When the jury brought in this verdict in this form: "We, the jury of ten to two, render the verdict in favor of the plaintiffs," we say this is no verdict at all and that the court had no power whatever to render a judgment on that verdict, or to amend that verdict, because it was not a verdict and it was defective not only in form but in substance.

And when the court assumed the function of the jury in changing not only the form of this verdict, but the substance of this verdict, as it had been written by the jury, and making it to read: "We, the jury, find the issue for the plaintiffs and assess their damages at the sum of one thou-

sand seven hundred and two dollars and nine cents," he committed, in our opinion, an egregious error and one that goes to the very heart of this cause. We do not contend that the court could not have sent the jury back to render a verdict in form and substance. The verdict, as rendered, was an absolute nullity. This is so apparent that we will not argue it, but we will quote some authorities to show that this action of the court in attempting to amend it was a fatal error.

What is a verdict and what is the province of a jury in rendering a verdict? In 38 Cyc. 1868; *McCoy* v. *Rieves,* 1 S. & M. 592; *Walker* v. *Commissioners,* 379; *Prussells* v. *Knowles,* 4 Howard, 90; *Huck* v. *Little,* 24 Miss. 463; *Macline* v. *Bloom,* 54 Miss. 365; See 38 Cyc. (Ill.), page 1880.

The seventh assignment of error refers to the granting of Instruction No. 2, for the plaintiff. It seems to us that this instruction is absolutely confusing and leaves the jury in absolute darkness as to what is meant by the instruction, unless it be meant as virtually a peremptory instruction for the plaintiffs for one thousand seven hundred and two dollars and nine cents. There is some part of this instruction that there is absolutely no testimony to warrant, where it says two cents off for strict middling tinges, and four cents for middling tinges, and the lot of cotton might contain twenty bales of tinges. We submit there is nothing in this record, or the testimony of any of the witnesses that warrant the giving of this instruction in the language in which it is given. This instruction is found on page 58 of the record. Then, too, it seems to us that this instruction again leaves out of sight entirely the question of any defect or loss in grades. It says simply that if the jury believes "from a preponderance of evidence, the plaintiff bought this cotton from defendants at thirty-five and fifty-five hundredths cents per pound basis strict middling one-fourth cent down for middling, two cents off for strict middling tinges, four cents off for middling tinges, said lot of cotton to contain twenty bales of tinges, on Jackson, Tennessee, compress weights, then you will find for the plain-

tiff and assess their damages at the amount sued for and interest at six per cent. from February 3, 1920."

There is nothing in this instruction at all about there being a loss in weights, even if it was brought on Jackson, Tennessee, compress weights, then the jury should find for the plaintiffs regardless of any question of whether there was any loss in weights or not, and regardless of any question of whether there was any loss in grades, and regardless of any question as to whether or not plaintiffs accepted the cotton and took it up at Somerville, Tenn. This instruction is little less obnoxious than instruction No. 1.

A careful reading of this record, will, we think, convince the court that the jury found contrary to the law and the evidence. When it was a question as to whether or not the witnesses, O. D. Lilly, as agent of the plaintiffs, went to Somerville and took up this cotton, and if he did take it up there, as the court correctly says in his opinion, he would not be allowed to go back on the grades; and, again it was a question as to whether he took it up on Somerville weights, or as to whether it should be Jackson, Tennessee, weights. Now, this witness himself in answer to question on page 24 of the record, says he went to Somerville, because his firm had some cotton sold, some middling and some strict middling, and that he was to go over there and take this cotton up and ship it direct and save compress charges in Jackson, Tenn., and when he got there it was raining and he did not attempt to class it. Now, that is clearly an admission that he purposed to take it up and pay for it at Somerville weights.

*Claude Clayton,* for appellant.

The oral contract between appellant and Lipsky Bros. was nothing—non-enforceable—though relating to the subject-matter, which afterwards became a reality, as between Lipsky Bros., and appellee. To express myself more clear-

ly Weil Bros. merely bought the contract of appellants, the contract being at the time non-enforceable and voidable.

Appellee, through its agent Lilly, on cross-examination, admitted that it was a mixed-up affair.

I respectfully submit that the action of Lilly, in taking up and weighing this cotton, at Somerville, fastens the contract as a reality between Weil Bros., and such delivery could not in any sense of the word be a delivery by appellant at all, nor could it be contended with any reason that Lipsky Bros., in the delivery of the cotton to appellee acted as agent for and on behalf of the Stone-Lowe Cotton Co. Lipsky Bros. looked to the man who took up and weighed the cotton for its pay. No agreement is disclosed by the record between Stone-Lowe Cotton Co. and Lipsky Bros. by which the two hundred and twenty-seven bales of cotton were to be delivered to appellee. The record on this particular point is as silent as a tomb of the Pharaohs, therefore if no instructions were given by Stone-Lowe Cotton Co. of any kind or character to Lipsky Bros., to turn over and deliver the cotton, in the name of reason how could it be contended that any agency existed between appellant and Lipsky? The appellant itself did not deliver the cotton, in fact never saw the cotton; in fact never gave Lipsky Bros. any instructions as to its disposition whatever. We respectfully submit that to create an agency whereby the Stone-Lowe Cotton Co. would be bound, it manifestly devolved upon appellee by its testimony to show the same. Let up suppose for a moment that it was, as contended by appellee, and that Lipsky Bros., were dishonest, unscrupulous and financially irresponsible, to such an extent as to amount to bankrupts. Then appellee through its agent Lilly had proceeded to Somerville, the day after this oral contract and applied to Lipsky Bros. to take up the cotton, and had paid him for ten times its true value, as is possible, even if not probable, would it be contended then in this extreme case that the Stone-Lowe Cotton Co. would be liable for such loss to appellee, who had actually paid ten times the value of the cotton. If so

this would be, I respectfully submit, a subversion or thwarting of the very intent and purpose of the statute of frauds. All in the world that Weil Bros. bought was a vaporous unborn contract, and by its own action in the payment for the cotton by Mr. Lilly produced an abortion thereof. Much might be said with reference to the *situs* of the contract, the performance and consideration, but I do not deem it necessary to proceed any further than what has been said in relation to the claim of appellee than has been said.

We submit that the action of the learned circuit judge in overruling the motion was based on the idea of an agency between Lipsky Bros. and the Stone-Lowe Cotton Co., which of course would make a delivery by appellant. The Stone-Lowe Cotton Co. never had possession of the cotton, never in fact saw it, never sent a single telegram in connection therewith; their only connection therewith was oral; therefore they could not be bound, and on this action of the court we respectfully submit that the verdict of the jury should be set aside and the judgment dismissed.

However there are other assignments of error which will be discussed by associate counsel, to which I shall not refer.

*John R. Anderson,* for appellees.

The court will see that there were only two questions before the jury in this case and they were: (a) Did the appellees buy the cotton involved in this case from appellants on Jackson, Tennessee, compress weight and the grades set out in the declaration and testified to by appellees? (b) Did the appellees take over the contract of appellants with Lipsky Brothers, thereby releasing appellants?

There was no controversy as to the amount, either in dollars and cents or in pounds, that the cotton lost when weighed at the Jackson compress; nor was there any controversy about the loss in grades and the loss in dol-

lars and cents by reason of the loss in grades.    The only question the jury had to decide was whether appellees made the contract they claimed to have made, or did they make the contract appellants claimed they made.    It is the contention of appellees that even if the jury had rendered a verdict for plaintiff in which they assessed the damages at the amount sued for, naming it, it would not have been any better than the verdict rendered, because under the instructions of the court, if the jury found for plaintiffs the amount of damages necessarily must be the amount sued for.    In other words the amount sued for in this case was not at issue, and therefore under the law a general verdict for the appellees was sufficient even tho it did not assess damages.    38 Cyc, 880 and note 40.

Even tho the declaration in this case did contain two counts as contended by appellants in their brief, still the verdict of the jury was good as to both.    *Montgomery* v. *Tilloston,* 1 H. 215, 29 Am. & Eng. Encyc. L. (2 Ed.), 1021.

When the jury returned their verdict and it was amended by the court, it was amended in the presence of the jury and counsel for both sides, and appellees contend that it was the duty of appellants to object to the amendment as well as any irregularity in the verdict, and unless they did so their action amounted to a waiver.

It is the duty of the court to amend or correct the verdict of the jury where the intention of the jury is manifest. Under the testimony in this case, as well as the instructions, it was certainly the intention of the jury to assess the damages of appellees at the amount sued for and interest, because these amounts were not in issue, or rather they were uncontradicted, and the jury when it rendered the general verdict it did could have meant nothing but that it was their intention that appellees recover the amount sued for with interest.    27 R. C. L. 62-63; 38 Cyc, 1896.

Appellees in their declaration (and the court so instructed them) asked for interest on their claim from the 3rd day of February, 1920, and in view of the fact that

the jury returned a general finding for the appellees, the court had a right to render judgment for the interest sued for. 38 Cyc, 1900.

The sixth and seventh assignment of errors attacks the two instructions granted appellees, and we shall take up and discuss these two assignments of error together because both of these instructions are exactly the same altho written differently.

The court by instruction No. 1, granted to appellees, merely instructed the jury to return their verdict for appellees if they believe from the evidence that appellees made the contract as set out in the declaration and as testified to by them. This instruction was proper because there was no testimony to the contrary that the cotton didn't lose in weights and grades, as well as in the amounts as testified to by appellees. In other words this instruction amounts to a peremptory instruction to the jury that if they believe appellees' version of the contract involved in this suit, then they must find for them for the amount sued for, including both grades, weights and interest. The question of what appellant's contract with Lipsky Brothers was, was not involved. The question was, did Weil Brothers make the contract as claimed by them in their testimony, or did they take over the contract of Stone-Lowe with Lipsky and in view of the fact that there was no controversy as to the amount of Weil Brothers' loss, the court had a right to instruct the jury that if they found for Weil Brothers, it had to be for the amount sued for. That is what this instruction No. 1 means.

Appellee's instruction No. 2 amounts to a peremptory instruction to the jury to find for the appellees if they believe appellees' version of the transaction involved in this case, because as stated above the testimony as to loss in grades and weights was uncontradicted. When the instruction for appellees and appellants are construed together the court, I believe, will find that they fairly state the law involved in this case and under the law the verdict as rendered by the jury should be upheld. *Y. & M. V. R. R.*

*Co.* v. *Williams,* 87 Miss. 344, 39 So. 489; *R. R. Co.* v. *Hardy,* 88 Miss. 732, 41 So. 505.

The court below in its opinion stated that a peremptory instruction would have been granted appellants on the question of grades, had such an instruction been asked. Appellant make much of this in their brief, but I am unable, for the life of me, to see how the learned judge arrived at any such conclusion, because appellee's witnesses testified that this cotton was bought to average a certain grade, and that upon being graded it failed to come up to these grades, and as a result thereof appellees lost. The court seems to have arrived at this conclusion because appellees sent their agent to Somerville to take up this cotton and it was appellees' duty to grade the cotton there and take it up. Appellees testified that the cotton was to average a certain grade, and surely they had a right to grade it at Somerville or Tupelo, or anywhere they might wish. Lilly, agent of appellees testified that the reason he did not grade it at Somerville was because the light was bad and it was raining, and it was therefore impossible for him to grade it there. According to appellees' contention as to the contract between them and appellants there was nothing said about when nor where this cotton should have been graded, and surely they had a right to grade it either as Somerville or Tupelo, and if the cotton didn't average as per contract, then they had right to demand the loss of appellants.

Appellants are not serious in their contention that the court erred in refusing to grant instruction No. 4 for appellants. There is absolutely no testimony to support such an instruction.

We respectfully submit that this case ought to be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

Weil Bros. brought suit against the appellant in the circuit court for one thousand, seven hundred and twenty-

two dollars and nine cents on a contract for the purchase of some cotton, alleging that on or about the 18th day of October, 1919, plaintiff bought from the defendants two hundred and twenty-four bales of cotton at thirty-five and fifty-five one-hundredths cents per pound, basis strict middling one-fourth cent up for good middling, one-fourth cent down for middling, two cents off for strict middling tinges, four cents off for middling tinges; said lot of cotton to contain about twenty bales of tinges; that two hundred and twenty-four bales of cotton were bought by the plaintiff at Jackson, Tenn.; that the cotton was to be taken up at Somerville, Tenn., to be settled for subject to readjustment according to weights and grades to be finally adjusted by the Jackson, Tenn., compress weights and according to its true grades to be afterwards ascertained; that the plaintiff paid the defendant for said cotton and in due course proceeded to have the same properly graded and weighed, and that this resulted in the loss of five hundred and ninety-nine dollars and fifty-three cents on grade and one thousand, two hundred and thirty-six dollars and ninety-three cents on weights, making a total of one thousand, eight hundred and thirty-six dollars and fifty-six cents, to which there is a credit of five point on one hundred and twenty thousand, and fifty-three pounds amounting to sixty dollars and three cents, and a credit in the grade of certain grades amounting to fifty-four dollars and forty-four cents, making a total credit of one hundred and fourteen dollars and forty-seven cents, which, deducted from the one thousand, eight hundred and thirty-six dollars and fifty-six cents, leaves the amount sued for one thousand, seven hundred and twenty-two dollars and nine cents, for which they demand judgment.

The defendant pleaded the general issue and gave notice thereunder that upon the trial the defendant would show that, incident to the sale of the cotton, it was agreed by the agent of the plaintiff and defendant, and without which no sale would have been made, the cotton in question amounting to two hundred and twenty-seven bales which

the defendant had purchased from Lipsky Bros. at Somerville, Tenn. The above-mentioned cotton which was to have averaged middling and the weights were to be taken from the receipts delivered to Lipsky Bros. at Somerville, Tenn. In other words, that the defendant was to pay Lipsky Bros. for the number and aggregate weight of said cotton according to their receipts and the class of said cotton was to average middling. That plaintiff's agent was present in the offices of the defendant at the time of the purchase and fully understood the terms upon which the purchase was consummated, and that the agent of the plaintiff was fully informed as to the terms and stipulations and agreed to go to Somerville, Tenn., to inspect, classify, and grade the cotton, and that, if it did not average middling and did not weight out according to the sale made to the defendant, he would not accept and pay for the same. That notwithstanding said agreement between the plaintiff and defendant, the agent of the plaintiff did proceed to Somerville, Tenn., to take up said cotton and in an unbusinesslike way accepted the weights furnished him by Lipsky Bros., paying no attention to the damaged bales of cotton and paid Lipsky Bros. for the gross amount and subsequently reclassified the grades thereof and made reclamation on the defendant after the damaged cotton had been picked and after Lipsky Bros. had been paid.

There was a sharp dispute between the plaintiff and the defendant as to the terms of the contract; the plaintiff's witnesses proving the contract in accordance with their theory, and the defendant by its witnesses in accordance with its pleadings. There is no dispute in the evidence as to the weights at the Jackson, Tenn., compress, and there is no dispute in the evidence as to the grades of the cotton proven by the plaintiff. The case proceeded to trial from its disputed issue of fact as to what the contract was and upon the theory on the part of the defendant that the plaintiff could not recover because there was no contract in writing and the value of the cotton sold was much more than fifty dollars.

There was a trial before a jury, and the jury found for the plaintiff in general terms without naming the amount of their verdict; the verdict of the jury reading as follows: "We the jury of ten to two render the verdict in favor of the plaintiff." After this verdict was returned, the court without consulting the jury amended the verdict so as to read as follows: "We, the jury, find the issue for the plaintiff and assess its damages at the sum of one thousand, seven hundred and two dollars and nine cents." And upon this verdict entered a judgment for said amount with six per cent. interest thereon from February 3, 1920. After the entry of this judgment, the defendant filed a motion for a new trial containing numerous grounds; among others, that the above verdict was no verdict at all upon which a judgment could be based, and that the court had no right to correct the verdict as was done as above stated. Also, that the court erred in instructing the jury, in instruction No. 1, that if said cotton failed to come up to the contract, "either in grades or weights, or both," to find for the plaintiff in the amount sued for. On the hearing of this motion for a new trial, the circuit judge made the statement that the defendant would have been entitle to a peremptory instruction as to the five hundred and ninety-nine dollars and fifty-three cents and that he would then enter a remittitur if he had the power to bind both parties by so doing, but that he could not bind but one party on the theory that there was no proof as to this item. On an examination, however, of the list of bales, marks, weights, and grades introduced in evidence and testified to by the plaintiff's agent as being correct, we find there was proof as to the grades of the cotton and the plaintiff's proof with reference thereto is not disputed. Neither is there any dispute as to the loss in weights. The verdict therefore for the plaintiff in general terms was necessarily on this record a finding for the plaintiff on the contract as testified to by the plaintiff, and, as there was no dispute in the evidence as to the loss in weights and the difference in grades according to the plaintiff's contract, there was no error in cor-

recting the verdict and entering judgment thereon. It is insisted by the appellant that the plaintiff's case required the establishing of both the grade basis and the compressed weight basis. We think the issue submitted as to what the contract was and the finding for the plaintiff on such issue carried both propositions. The defendant's theory of the contract was that the plaintiff was to take over its contract with Lipsky Bros. giving it a profit of five points. This contract was rejected by the jury. So there was no error with reference to this matter.

It is next complained that instruction No. 1 for the plaintiff is error. This instruction reads as follows:

"The court instructs the jury for plaintiff that if you believe from the preponderance of the evidence in this case that Weil Bros. bought the cotton involved in this suit from the defendants on the contract prices, the contract grades, and the contract weights as set out in plaintiff's declaration, and that said cotton failed to come up to said contract either in grades or weights, or both, then you will find for the plaintiffs and assess their damages the amount sued for."

The error is alleged to consist of that part of the instruction which says that if "said cotton failed to come up to the said contract either in grades or weights, or both, then you will find for the plaintiffs and assess their damages the amount sued for." The instruction must be taken as a whole, and the first part of it required the jury to find from the preponderance of the evidence that the cotton was bought on the contract prices, the contract grades, and the contract weights as set out in plaintiff's declaration. Inasmuch as there was no dispute in the evidence as to the weights and grades, the instruction would not be reversible error, though it was technically incorrect in its concluding parts to say if the cotton failed to come up to the contract either in grades or weights, or both, there was nothing to do save find a verdict for the amount sued for by the plaintiff. When the jury found under this instruction the verdict as testified to by the plaintiff and the plain-

tiff put in evidence, which was not disputed, as to the loss in grades and weights, there was nothing to do save find a verdict for the amount sued for by the plaintiff. In other words, the whole controversy turned upon which party established the contract. Besides what we have said above, the whole trial proceeded upon the theory up to the verdict and judgment as to which was the contract; the plaintiff's evidence tending to establish one contract, and the defendant's evidence a different contract, with the further contention by the defendant that the statute of frauds applied and the plaintiff could not recover because of that. The appellant raised the present contentions upon the motion for a new trial. Instruction No. 2 for the plaintiff is also complained of, but we fail to see wherein it is erroneous when applied to the testimony in this record.

The judgment of the court below will therefore be affirmed.

*Affirmed.*