Mississippi Power & Light Co. *v.* McCormick.

(Division B.  Mar. 23, 1936.)

[166 So. 534.  No. 32136.]

May & Byrd, of Jackson, for appellant.

Brewer & Hewitt, of Jackson, and **Frank F. Mize**, of Forest, for appellee.

Argued orally by **J. L. Byrd**, for appellant, and by **Earl Brewer**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

Appellant, under a public franchise, furnishes natural gas in the city of Jackson, and, on the dates herein mentioned, appellee was the tenant in said city of a residential apartment, which was heated by natural gas supplied by the appellant. The heater and other gas fixtures within the apartment were installed and were owned by the proprietor of the apartment building, and not by appellant.

On Wednesday afternoon, January 2, 1935, appellee noticed that gas was leaking somewhere in her apartment, and she informed appellant thereof by telephone. In about half an hour an employee of appellant appeared at the apartment with tools, was admitted therein, made an examination of all the gas equipment, and after having been there apparently a sufficient length of time, he left with the statement made to appellee that all the fixtures had been put in good order and were entirely safe for continued use. Towards the end of the week appellee left her apartment and went for a visit to her former home. She closed all gas valves completely and locked the apartment. She returned on the following Sunday night, and on Monday morning, January 7th, she went into the bathroom and struck a match to light the gas heater, when, instantly, there was a violent explosion. Flames enveloped the room from about four feet upward, including the upper portion of the body of appellee. The severity of her burns was such that appellee was confined to the hospital for two months, and, for a while, it was feared that she would not survive.

On the day of the injury and within a few hours thereafter, a brother of appellee made an examination of the apartment and of the gas fixtures therein in order to ascertain, if possible, the cause of the explosion. He testified that as a result of this examination, he found a loose union joint about three inches from the heater valve which looseness permitted a small quantity of gas to leak into the bathroom, which was a small room of about six by eight feet, and because of that room having been closed over the week-end, there was produced the conditions which would cause an explosion. It is admitted by all the witnesses that the leak as above mentioned was so situated in the bathroom heater fixtures that any competent person could not fail to find and correct it if in the exercise of the proper care.

The above is the case as to liability as made out by witnesses for appellee. Appellant made a strong defense against the truth of some of the essential facts as thus outlined; but the defense upon the said facts is not so strong or overwhelming as that we would be authorized to interfere with the findings of fact by the jury on the issue of liability. And upon that issue there is no difficulty as to the law, which may be briefly stated as follows: When a gas company has notice that gas is escaping in the premises of a patron, the company must either shut off the gas or remedy the defect, and one or the other must be done as quickly as practicably possible. Natural gas is an extraordinarily dangerous element, and those who are authorized to furnish it for use among the public are charged with a degree of care and skill commensurate with that danger; and in such cases as in all cases of known danger, "the sacredness of life and limb is the declared basis upon which the law imposes a duty of care." Green v. Maddox, 168 Miss. 171, 180, 149 So. 882, 151 So. 160, 161.

But the verdict of $30,000 is excessive. Reluctant as we are to interfere with verdicts, there has been, from the beginning of the consideration of this case, no disagreement among us that upon the present record this verdict must be cut down. The amount is far in excess of the average verdict of juries throughout the state in cases of comparable or worse injuries—it is far in excess of the average verdict in death cases. Appellee in realization of this fact, argues that the verdict can and should be maintained upon the basis of impairment of earning capacity. It is shown by the evidence that appellee was, at the time of her injury, an accomplished pianist, and was earning as a teacher of piano music and as a radio and convention entertainer more than four hundred dollars per month; that at the time she was only twenty-seven years of age, in perfect health, and had therefore a life expectancy of more than thirty years.

That since her injury she has been able to earn only about two hundred dollars per month, and that she has lost her radio and convention employments because of the injuries to her eyes and hands.

This case was tried and the record made within about seven months from the time appellee was released from the hospital. Except in cases where there is a loss of a limb or some such specific injury that it can be known as a definite probability that the wonders of the healing powers of nature can never repair the hurt, the data upon which the jury is required to act upon the complaint of permanent loss or injury so soon after the original injury, is often of an unsatisfactory and delusive nature. Before her injury, appellee had a music class of thirty pupils. In the short space of a few months she had rebuilt her class to twenty pupils. How could it be so soon said, as a reasonable probability, that she would not again have her normal class of thirty pupils?

She was earning about fifty dollars per month as an entertainer and arranger of entertainment programs at conventions. How could it be said, when only seven months had elapsed since her release from the hospital, that as a dependable probability she can never again obtain this employment at conventions? She was earning one hundred sixty dollars per month as a piano soloist and accompanist at the radio station WJDX. There is no proof that such a position is a permanent part of the program of such a station, and no proof that a particular entertainer is ever kept permanently in the employ of a particular station. On the contrary, is it not rather to be expected that changes in the personnel of the entertainers will be made from time to time, since we must know that the greatest actors and others who furnish diversion, amusement and entertainment never hold the boards at any one place for any great length of time?

And we venture to advance the question mark still

further in this case. One of the notable difficulties which has beset the law upon the issue of permanent impairment of earning capacity has been the inquiry whether, had the injury not occurred, the injured party would have permanently remained in the same occupation or would have abandoned it in whole or in part to pursue some other calling or to take some other station in life. The plaintiff in this case was, at the time of her injury, a young woman not yet past the days of her real youth. Life has changed somewhat in modern days as we know, but we are nevertheless not prepared to accept it as a probability, without specific proof, that a woman yet so young, and although capable of financial independence, will continue the remainder of her competent days to pound a piano from early morning until late at night rather than accept the station of marriage in common with the vast majority of her sisters in this and all other times. We are pointed to nothing in this record which meets the suggested question, and there is nothing which would indicate that the injuries have been of such nature that the plaintiff may not yet enter upon a different station in life. Sufficient and pertinent specific proof may meet these questions, but the point is that there is no such proof in this particular record.

Since the issue of permanent impairment of earning capacity projects us into the future, which no man can know, the discussions of jurists and text-writers upon the subject abound in warnings against the allowance of large verdicts for such impairment, unless the proof be cogent upon the probabilities rather than to have presented dismal pictures of regrettable possibilities; and all agree that, except in rare cases, the condition of things as to earnings at the time of the injury as compared with that at the time of the trial, especially if the trial be within a short time, is not the rule for measurement, although those facts are to be taken into consideration. The reasonable and dependable probabilities,

looking through all that may happen and for all the years for which the computation is to be made, and viewed according to the general experiences and observations of life, are the elements which are to guide to a fair and acceptable result; and reviewing the present record in that light, we think the verdict should be reduced one-third.

If the appellee will enter a remittitur of ten thousand dollars, the judgment will be affirmed for twenty thousand dollars; otherwise it will be reversed insofar as it fixes the amount to be recovered, and the cause will be remanded for a new trial on the question of the amount of the damages only. We have called attention to the fact that the trial of this case was within about seven months of the time of appellee's release from the hospital. The record bears many indications of remarkable progress towards recovery from the injuries. If, however, the time that has since passed discloses that in fact the verdict should not be reduced, appellee will have the option to decline the remittitur, and to put the case of her damages to another jury and thereupon, with all the advantages that the passage of time has produced, if such advantages are in truth present, may make her proof more complete, and thereby produce a more satisfactory record than that now before us.

Affirmed, with remittitur.