[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 639 
This is an appeal from the Circuit Court of Lincoln County. Appellees were awarded $92,500 for the death of Mrs. Lucille Bilbro. Mrs. Bilbro died as a result of a collision between her car and appellants' truck. The basic facts are as follows.
Mrs. Bilbro, age forty-nine, was proceeding west in the north lane of State Highway 550. The front seat passenger was her thirty year old daughter. Four passengers were in the rear seat, including her ten year old daughter and five year old son. The accident occurred approximately four miles west of Brookhaven.
The appellant construction company's loaded twenty-eight and one-half foot long gravel truck was traveling east in the south lane of Highway 550. The truck driver was appellant Perry. Perry had been following a pulpwood truck about two and one-half miles. It was impossible to see over the truck because of its log load.
A county road branches from the north side of Highway 550 in a curve. Vegetation partially obscures the intersection from the vision of persons traveling east. Perry was four or five truck lengths behind the pulpwood truck and his rate of speed was thirty to thirty-five miles per hour. He turned left across the oncoming lane of traffic into the county road, and the collision with appellee occurred.
The appellants contend the turn had been completed and the collision occurred within the bounds of the county road. Appellee alleges the collision took place in the north lane of Highway 550.
The Bilbro car laid down eighty feet of skidmarks. The initial contact occurred at the truck's right front fender. The truck continued moving and, when it stopped, the front of the car was located at the rear of the trailer. The car was pulled partially out of the north lane of traffic. Approximately four to five feet of the car remained in the north lane of Highway 550. The investigating patrolman and LeRoy Smith, the owner of a nearby grocery store, both testified that appellant Perry told them the pulpwood truck blocked his view of the oncoming traffic and he didn't see the Bilbro car when he cut in front of it.
Barbara Jean Bilbro, age fifteen, was a passenger in the rear seat. She testified that she couldn't see the appellants' truck because of the pulpwood truck; that it suddenly pulled over into their lane of traffic; that Mrs. Bilbro did everything within her power to avoid the accident but to no avail. She further testified that after the collision Mrs. Bilbro said, "Oh, me!" and laid her head to one side. She made no other statement or movement and was pronounced dead on arrival at the hospital.
Eleven assignments of error are made by the appellants. It is unnecessary for us to treat these assignments individually since the treatment of some will also control the consideration of others.
Appellants' first contention is that the lower court erred in not granting a peremptory instruction because the negligence of Mrs. Bilbro was the sole proximate cause *Page 640 
of the accident. We disagree because testimony on behalf of the appellee was sufficient to justify the jury in believing that Perry's actions caused the collision. Appellees' testimony was substantiated by Perry's statements to the patrolman and grocery store owner. Perry's testimony on direct tended to show he looked, turned on his signal light, and did not see any approaching traffic. The conflicting testimony and evidence were properly submitted to the jury.
The appellants' second contention that Mrs. Bilbro had the last clear chance to avoid the accident is not substantiated by the record. The pulpwood truck was obviously still in the eastbound lane and prevented appellee from using that lane to avoid the accident.
Appellants' third contention is that four of appellees' instructions are "any negligence" instructions, and constitute reversible error. We have carefully studied all of the instructions given and are of the opinion that the instructions given to both parties, when read together, do not have any error but accurately state the applicable rules of law under the facts of this case. The comparative negligence instructions given both parties, when read together, accurately instruct the jury with reference to the diminution of damages on account of contributory negligence on the part of the deceased.
Appellants in their fourth contention urge that there is no proof of conscious pain and suffering and that the court erred in refusing appellants' instruction to that effect. While it is apparent that Mrs. Bilbro did not suffer for any length of time, the proof nevertheless is sufficient to show that she was conscious and that she did experience pain and suffering when she remarked, "Oh, me!" She was therefore not killed instantly, and the jury had a right to value, as it saw fit, the pain which she did experience for such length of time as she remained conscious.
The appellant urges that its instruction that "punitive damages cannot be awarded in the verdict of the jury" should have been allowed. The testimony does not show any of the required elements on which punitive damages could be allowed as set out in Milner Hotels, Inc. v. Brent, 207 Miss. 892, 43 So.2d 654, 14 A.L.R.2d 710 (1949). We dealt with this proposition in Fowler Butane Gas Company v. Varner, 244 Miss. 130, 141 So.2d 226 (1962). We pointed out in that case that the plaintiff asked for punitive damages in his declaration and got an instruction "for all damages sustained by the plaintiff as shown by the testimony." We pointed out that it was reversible error for the court to refuse an instruction denying punitive damages. This is also the teaching of Chicago, St. Louis and New Orleans R.R. v. Scurr,59 Miss. 456 (1882).
It is obvious that an instruction denying punitive damages should always be given where presented and where there is no evidence to sustain a verdict for exemplary or punitive damages.
In the instant case, however, it will be noted that the declaration does not seek punitive damages. We are told that this was amended during the trial, but we are bound by the record on appeal. Moreover, the appellee obtained an instruction specifically setting out the damages which could be awarded, and the appellee did not request an instruction on punitive damages. In short, there is nothing shown in this record from which a jury could return a verdict for punitive damages. Under the peculiar facts and circumstances in this case, we hold that the failure of the trial judge to instruct the jury on a subject which was not an issue in the case was not error.
Appellants next urge that the statements made in the final argument by appellees' attorneys are prejudicial to the rights of appellants. Appellees' attorney stated:
 Gentlemen of the jury, what did the driver of the truck tell the highway patrolman? *Page 641 
Well, something to the effect that "I'm in the wrong — I didn't yield the right-of-way." He knew that the people on 550 had the right-of-way. That's the reason he said that. He knew that he should have yielded the right-of-way to Mrs. Bilbro. That is the reason why he told the highway patrolman that "I should have yielded, I didn't yield the right-of-way."
The exact words stated by appellant Perry to the patrolman were: "I was following a pulpwood truck, I didn't see her; I couldn't help it. I didn't see her and I cut across the road in front of her." While technically the statements made by counsel are not explicitly found in the record, nevertheless the essence of the testimony of appellant Perry and the natural inferences to be drawn therefrom indicate to us that the departure on the part of appellees' attorney was not so prejudicial as to constitute reversible error.
In Nelms Blum Company v. Fink, 159 Miss. 372, 131 So. 817
(1930), we pointed out:
 Counsel necessarily has, and must have to serve his function and office, a wide field of discretion. He may comment upon any facts introduced in evidence. He may draw whatever deductions seem to him proper from these facts, so long as he does not use violent and abusive language, and even in many cases invectives may be justified and even called for, as eloquently pointed out by Chief Justice Whitfield in Gray v. State, 90 Miss. 235, 43 So. 289. Counsel is not required to be logical in argument; he is not required to draw sound conclusions, or to have a perfect argument measured by logical and rhetorical rules; his function is to draw conclusions and inferences from evidence on behalf of his client in whatever way he deems proper, so long as he does not become abusive and go outside the confines of the record. * * * (159 Miss. at 382, 131 So. at 820.)
 * * * As to the facts in evidence, he may array them in such figures and form and clothe them with such ideas and conclusions as he can conjure up in his mind for the best interest of his cause. (159 Miss. at 383, 131 So. at 821.)
The overall effect of the truck driver's admissions were that he could not see the oncoming car because his view was obstructed. Nevertheless, he pulled into the north lane of traffic in front of the Bilbro car. This act was violative of Mississippi Code 1942 Annotated section 8196 (1956). Perry should have stopped or slowed down until the pulpwood truck ceased to obstruct his view. He should not have moved until he could see. Under the rule in Mississippi a motorist is presumed to see what he should have seen whether he saw it or not. Kettle v. Musser's Potato Chips, Inc., 249 Miss. 212, 162 So.2d 243 (1964); Gray v. Felts, 241 Miss. 599, 131 So.2d 454 (1961); Lee v. Reynolds,190 Miss. 692, 1 So.2d 487 (1941).
The appellants failed to file their bill of exceptions timely insofar as the foregoing error is concerned. The verdict of the jury was rendered and judgment signed and entered on January 13, 1967, which was filed with the clerk on the same day. The bill of exceptions was not presented to the circuit judge and signed by him until January 23, 1967. The presenting and signing of the bill of exceptions was therefore ten days after the jury verdict. In Nelms Blum, supra, we stated as follows:
 As stated above, the special bill of exceptions was not presented and signed until the trial had ended. If the objection had been sustained counsel should have some chance ordinarily to reshape his argument so as to present his thought in its most effective form, therefore it would be a rare case which we would reverse where a bill of exceptions was not presented to the trial judge prior to the rendition of the verdict, or prior to the close of the argument. *Page 642 
There should at least be a verbal statement of the argument, and the objection thereto, before the argument is ended, and a ruling should be insisted upon.
 We find no reversible error, and the judgment is affirmed. (159 Miss. at 383, 131 So. at 821.)
We hold, therefore, that statements made by counsel under the facts of this case do not constitute such a departure outside the confines of the record as to merit a reversal and retrial.
The seventh error assigned by appellants is that the jury did not follow the law in determining the damages. With this contention we cannot agree. We do not feel that because the jury wrote on the verdict and a separate piece of paper, "We find the defendants 50% responsible for accident and death of Mrs. Lucille Bilbro, $92,500", that the jury did not follow the law in determining damages. This is certainly surplusage and not a part of the verdict. The fact that the jury in considering the contributory negligence of Mrs. Bilbro and the negligence of appellants and determining that it was equal does not per se establish the fact that the jury did not follow the law in determining damages. At the time the jury returned its verdict and it was announced in open court, counsel representing appellants voiced no objection whatever to the verdict. Furthermore, subsequent to the rendering of the verdict the trial judge polled the jury and each of the twelve jurors admitted that his verdict was that the appellees were entitled to $92,500.
Mississippi Code 1942 Annotated section 1518 (1956) provides as follows:
 No special form of verdict is required, and where there has been a substantial compliance with the requirements of the law in rendering a verdict, a judgment shall not be arrested or reversed for mere want of form therein.
In Poynter v. Trotter, 250 Miss. 812, 168 So.2d 635 (1964), we pointed out as follows:
 Second: No special form of verdict is required under the laws of this State (Mississippi Code Annotated, Section 1518 (1942)) A verdict is sufficient in form if it decides the question in issue, and is certain in such a way as to enable the court intelligently to base a judgment thereon. Moreover, where a jury verdict is responsive to the issue but also contains findings which are not necessary for the determination of the issue involved, such additional findings may be disregarded as surplusage. Meridian City Lines, Inc. v. Baker, 206 Miss. 58, 39 So.2d 541, 8 A.L.R.2d 854 (1949); Ruffin v. J. M. Schwabacher, Ltd., 156 Miss. 326, 126 So. 14 (1930); Collins v. Carter, 155 Miss. 600, 125 So. 89 (1929); Hines v. Lockhart, 105 So. 449 (Miss. 1925); Stone-Lowe Cotton Co. v. Weil Bros., 129 Miss. 60, 91 So. 859 (1922); Thornton v. Lucas, 29 So. 400 (Miss. 1901); Patrick v. Carr, 50 Miss. 199 (1874); Windham v. Williams, 27 Miss. 313 (1854); Montgomery v. Tillotson, 1 How. 215 (1835); 89 C.J.S. Trial § 509 p. 185 (1955); 53 Am.Jur. Trial § 1904 p. 758 (1945). (250 Miss. at 814, 168 So.2d at 636.)
The appellants got strong instructions on comparative negligence which thoroughly protected them in this regard. The jury had a right under these instructions to determine the comparative negligence of Mrs. Bilbro and to diminish the amount of damages to which the appellees were entitled in proportion to such negligence on Mrs. Bilbro's part.
It is the last error assigned by appellants for consideration by us which has caused us great concern, namely, that the verdict is so excessive as to evince bias, passion and prejudice. In determining whether or not the case should be reversed because of any excessiveness of *Page 643 
the verdict which evinces bias, passion and prejudice, we note that Mrs. Bilbro was forty-nine years of age at the time of her death. She was survived by her husband who was sixty years of age and by five children. The ages and life expectancy of the members of the family are as follows:
 LIFE NAME AGE EXPECTANCY
 H.F. Bilbro 60 years 16.12 years Mrs. H.F. Bilbro 49 years 24.45 years Betty Opal Bilbro 30 years 41.25 years Jimmy Bilbro 27 years 43.99 years Billy Ray Bilbro 21 years 49.46 years Sylvia Bilbro 10 years 59.58 years Terry Wayne Bilbro 5 years 64.19 years
Since Mr. Bilbro is older than his wife, his life expectancy of 16.12 years would control insofar as his loss of companionship, services and contributions suffered as a result of his wife's death are concerned. The life expectancy of Mrs. Bilbro, however, controls insofar as the children's companionship, services and contributions are concerned. Three of the children were living at home with Mrs. Bilbro at the time of her death, namely, Betty Opal, age thirty, Sylvia, age ten, and Terry Wayne, age five. The other children were married and living apart. Mrs. Bilbro, her husband and children enjoyed good health. Mrs. Bilbro was employed at a local factory. On August 24, 1966, she was killed and had earned during 1966 up to that date $2,504.30, which is about seven and three-fourths months. This approximates $3624 a year in earnings. In addition, Mrs. Bilbro did all of her housework, including washing, ironing, mending clothes, buying groceries, cooking and looking after her husband and children as a wife and mother should do. The record discloses that she contributed all of her time and income to her family, was an industrious, dutiful wife and mother and taught and reared her children in a moral manner, providing for their spiritual welfare. Mississippi Code 1942 Annotated section 1453 (1956) provides in part as follows:
 [T]he party or parties suing shall recover such damages as the jury may determine to be just, taking into consideration all of the damages of every kind to the decedent and all damages of every kind to any and all parties interested in the suit.
The appellees were entitled to the following:
(a) To recover for the loss of companionship and society of their deceased wife and mother. Standard Coffee Co. v. Carr,171 Miss. 714, 157 So. 685 (1934), sugg. of error overruled (1935).
(b) To recover for the loss of support to the minor children for the loss of their mother. Delta Chevrolet v. Ward, 211 Miss. 256, 51 So.2d 443 (1951).
(c) The surviving husband is entitled to recover for the loss of services rendered by his wife. Gulf Transport Co. v. Allen,209 Miss. 206, 46 So.2d 436 (1950).
(d) The surviving minor children are entitled to recover the loss of any care or moral training during their minority as a result of their mother's death. Standard Coffee Co. v. Carr,171 Miss. 714, 157 So. 685 (1934), sugg. of error overruled (1935).
The instructions granted the appellees clearly advise the jury as to the damages *Page 644 
to which appellees would be entitled on account of the death of Mrs. Bilbro. Appellants contend that the jury arbitrarily took the amount sued for of $185,000 and perfunctorily reduced this by fifty percent for comparative negligence. Appellants further urge that the record only shows Mrs. Bilbro worked for sixteen years. It does not show she was the family breadwinner nor does it show she made any specific contributions to the family income other than that testified to by Mr. Bilbro.
Appellants, in support of their contention that the verdict is exceedingly excessive, cite Henson Ford, Inc. v. Crews, 249 Miss. 45, 160 So.2d 81 (1964); Illinois Central R.R. v. Nelson,245 Miss. 395, 146 So.2d 69, 148 So.2d 712, 4 A.L.R. 3d 1217 (1962); Sandifer Oil Co. v. Drew, 220 Miss. 609, 71 So.2d 752 (1954); Mississippi Power Light Co. v. McCormick, 175 Miss. 337,166 So. 534 (1936). Appellants point out in the Nelson case, supra, where a verdict of $15,000 was allowed, that the fifty year old breadwinner consciously suffered "greatly, both physically and emotionally," for fourteen days. Likewise, in the Drew case, supra, where punitive damages were allowed, an award of $90,000 was allowed for the death of a fourteen year old girl who suffered horrible burns, in which case we described the little girl's pain as "excruciating." In the McCormick case, supra, appellants urge that we compared the elements of damage with the elements of damage and verdicts in other cases and held that a verdict of $30,000 is in excess of the average verdict in death cases. Appellants point out that in the Crews case, supra, the verdict evinces bias, passion and prejudice on the part of the jury and the record contains almost no testimony insofar as pain, suffering or mental anguish is concerned. Appellants urge this is applicable to the facts in the case at bar.
The case of Smith v. Hicks, 201 So.2d 35 (Miss. 1967), cited by appellants, is easily distinguishable from the facts in the case at bar and has no application thereto.
In conclusion, there is no mathematical formula for setting the amount of damages in a death case. No one knows the value of a human life to those who love and are associated with that person. Standards and criteria have been utilized by this Court over the years in order to determine what constitutes just and reasonable damages for injuries and death.
In Illinois Central R.R. v. Ragan, 252 Miss. 335, 173 So.2d 433
(1965) we allowed a recovery of $60,000 for the death of a fifty-two year old wife who was survived by a fifty-eight year old husband and three grown married children. She earned $30 per week and had no conscious pain and suffering. Her children were not dependent on her. This case is authority for the proposition that the $92,500 verdict in the case at bar does not evince bias, passion or prejudice on the part of the jury. It is to be remembered that the trial judge who had the opportunity of seeing, observing and hearing the testimony as it was offered refused to require a remittitur to be entered in this case and his judgment is entitled to consideration and weight. In McDonald v. Moore, 159 Miss. 326, 131 So. 824 (1931) we said:
 Juries are better calculated to know the extent of the injuries and the amount of damages than the appellate court. Their verdict here was sanctioned by the judgment of the trial judge, which is also entitled to weight and respect. * * * (159 Miss. at 332, 131 So. at 825.)
As was pointed out in Walters v. Gilbert, 248 Miss. 77,158 So.2d 43 (1963), "We recognize that which everyone knows, namely, that the purchasing power of the dollar today is between forty and forty-five percent of its face value and a verdict of five thousand dollars is actually worth less than twenty-five hundred dollars *Page 645 
in buying power because of present inflation. Therefore, the verdict is not excessive." (248 Miss. at 94, 158 So.2d at 51.) Since that decision was rendered, inflation has increased and the purchasing power of a dollar today is even less than when the Walters v. Gilbert, supra, opinion was written. The amount of verdicts, because of the decreased purchasing power of a dollar, has steadily increased over the years. A hundred thousand dollar verdict was awarded in Florida for the death of a twenty-six year old wife and her husband and their four year old son. Lithgow v. Hamilton, 69 So.2d 776 (Fla. 1954).
In Continental Bus System, Inc. v. Toombs, 325 S.W.2d 153
(Tex.Civ.App. 1959) a hundred thousand dollar verdict was rendered in the Texas Civil Appellate Court for the death of a wife trained as a legal stenographer and music teacher and she also cared for two children at home. In Atlantic Coast Line R.R. v. Braz, 182 So.2d 491 (Fla. 1966) the District Court of Appeal (3rd District) reduced a verdict of $185,000 to $160,000 for the death of a twenty-six year old wife who was killed instantly in a collision with defendant's train. There was no pain or suffering in that case. In New Orleans and Northeastern R.R. v. Thornton,191 So.2d 547 (Miss. 1966) we required a remittitur so that a verdict of $150,000 for the death of a forty-four year old wife who had a cancer which was aggravated by injury was reduced to $115,000. The wife was survived by her husband and four children. She was a housewife and mother and had no income. Pain and suffering was involved in this case.
In the case at bar two minor children, aged five and ten, and three adult children have been deprived of the love and affection, training and companionship of their mother who was earning approximately $300 per month.
Considering all of these factors objectively, we cannot say that the verdict of the jury evinces bias, passion or prejudice, or is so large as to shock our conscience. For all of these reasons the judgment is affirmed.
Affirmed.
ETHRIDGE, C.J., and RODGERS, PATTERSON and SMITH, JJ., concur.