## Mississippi Public Service Co. *et al. v.* Bassett *et al.*

(Division B.   Nov. 21, 1938.   Suggestion of Error Overruled Jan. 2, 1939.)

[184 So. 419.   No. 33405.]

John F. Frierson, of Columbus, for appellant, A. W. Dill.

R. H. & J. H. Thompson, of Jackson, for appellant, Mississippi Public Service Company.

**Reily & Parker**, of Meridian, for appellees.

Argued orally by **John F. Frierson** and **J. H. Thompson**, for appellants, and by **Marion Reily**, for appellees.

**McGehee, J.,** delivered the opinion of the court.

The appellee J. B. Cunningham awarded a contract to the appellee J. J. Bassett for the erection of a dwelling

house in the Town of Brooksville, Mississippi, according to plans and specifications furnished by the architects in charge, and this building was to be turned over to the owner when completed, as a "lock and key job," for an agreed contract price. When the building was virtually finished it was wrecked and greatly damaged by an explosion of gas, as a result of which the owner, Cunningham, claimed on the trial in the court below that he had been injured and damaged to the extent of from $2,000 to $3,000, as representing the difference between the value of the building as it had been repaired by the contractor, subsequent to the explosion, and its value immediately before the explosion occurred; and the contractor, Bassett, likewise claimed that he was injured and damaged by reason of the explosion, and to the extent of the value of his time and expenses incurred for labor and materials in repairing the building, amounting to the sum of $2,997.50. The appellees, as co-plaintiffs in the court below, undertook to join in one suit the alleged causes of action against the appellants, Mississippi Public Service Company, hereinafter referred to as the gas company, and A. W. Dill, as co-defendants in the court below, and predicated their right to do so on a written agreement, introduced in evidence, but not made an exhibit to their declaration so as to render it demurrable for misjoinder, whereby Bassett assigned to Cunningham twenty per cent of the claim held by him in the subject matter of the suit and Cunningham assigned to Bassett eighty per cent of the claim held by him therein.

At the conclusion of the evidence offered on behalf of the appellees there were motions made by each of the appellants for peremptory instructions on the ground that a proper joinder of the alleged causes of action had not been shown, and on the further ground that no case of liability had been proven against the appellants, respectively. These motions were by the court overruled, and at the conclusion of all of the testimony in the case

a judgment was rendered against both appellants for the sum of $5,000, the amount sued for.

In view of our conclusion that the case must be reversed and remanded on such terms as to preclude a retrial of the issue between the appellee Bassett and either of the appellants, it is unnecessary that we discuss the question as to whether or not there was a misjoinder of parties and causes of action on the former trial, since the alleged misjoinder will not exist upon a retrial of the cause.

Passing now to the question of whether or not the appellants, respectively, were entitled to peremptory instructions on the issue of liability for the damage sued for, we deem it essential that the salient facts in the case should first be herein set forth, and especially is this true on account of the various angles of the issues here involved.

According to the plans and specifications for the erection of the building by the contractor Bassett for the owner Cunningham, he was required to install gas piping from the inlet to the building to the outlet for such appliances as were intended to be installed, but was not required by his contract to install or connect any appliances with such gas piping. Pursuant to contract he installed underneath the building during the early progress of the construction the gas pipes provided for in the plans and specifications, one of which pipes extended to the kitchen and up through the subflooring and another to the furnace room and up through a concrete floor therein. Shortly thereafter he was informed by the owner that the gas company had failed to agree on an extension of its gas main so as to make gas available to the building. When the contractor was ready to install a rubber tile flooring in the kitchen he inquired of Mrs. Cunningham, wife of the owner, and who was having the residence built and had full authority in the premises, as to whether or not he should leave the gas pipe in the kitchen so that it would extend through the

tile flooring, and was informed that this was not desired. He thereupon pushed the pipe down through the flooring and left it uncapped underneath the kitchen in such manner that gas could escape therefrom if and when gas was later supplied to the building. He did not advise either the owner or his wife, or any other person, that he had left the pipe uncapped, although both the owner and his wife knew that it had been left underneath the building connected with the pipe which ran from the outside, and that it had been pushed through the kitchen floor. When the building was nearing completion the gas company agreed with the owner to extend its gas main so as to supply gas to the building, and dug the gas line and installed the gas pipe from the main to the building. The contractor knew that the gas line had been dug, and then knew that it was contemplated that a gas meter was to be installed for the purpose of letting the gas from the line outside of the building into the pipes underneath the same for the use of the owner when it was ready for occupancy. The gas line had been dug and the pipe installed from the gas main to the building for nearly two weeks prior to the explosion. He further knew prior to the explosion that the owner intended to move into the building as soon as the appellant Dill could complete the installation of a gas furnace room. The explosion occurred on Saturday afternoon before the owner was to move in on the following Monday. The contractor was asked this question on cross-examination: "You knew the day set to move was Monday?" He replied: "If Mr. Dill got his heating plant in they were going to move." "Q. You knew they were hurrying up to get the heating plant in, didn't you?" He answered: "Yes, sir." The explosion occurred on the 20th day of February, and he necessarily knew that, since the owner was waiting for the gas heating furnace to be installed for use that the gas meter would be installed so as to make gas available. He knew that no other means of heating the building had been provided,

and that it was winter time. Knowing all of these facts he failed to inform the appellant Dill that the uncapped pipe was suspended beneath the kitchen floor. Shortly before the installation of the heating furnace the gas company installed its meter and connected the gas pipes on the outside of the building with the gas piping underneath the same. Upon doing so the meter was turned on by the representatives of the gas company to permit an inflow of gas and it was discovered that gas was escaping through some open pipe. Whereupon they investigated and found that the gas pipe extending up into the furnace room had been stopped up only with a wad of paper. These men immediately shut off the gas meter and thereby prevented any further gas going into the house piping. They did not discover the uncapped pipe beneath the kitchen. This was about a week or two prior to the explosion, when the meter was installed and the gas made available at the request of Mrs. Cunningham.

On the day when the explosion occurred the appellant Dill under a contract with the owner, separate and distinct from that made with the contractor, went to the building and installed the gas heating furnace in the furnace room by connecting it securely and in a workmanlike manner with the gas pipe which extended about three inches above the floor in the furnace room. After so doing he turned the gas on through the meter on the outside of the building, after having first searched in every room of the building to ascertain if there were other gas pipe openings notwithstanding that he had been previously informed by the owner and contractor that the gas pipe in the furnace room was the only one which had been provided in the building. He then returned to the furnace room, tested the joints by flame from lighted matches and found that no gas was escaping from the pipe joints, and then lighted the pilot light and burners of the furnace. They burned a few moments and went out. It was shown that they do not come already adjusted. The gas was then turned off at the meter, and

an adjustment of the burners was made, and they were then relighted and had burned a few moments more when the explosion in question occurred some distance away underneath the house, presumably in the locality where the uncapped pipe was situated underneath the kitchen. It was not shown that any gas was escaping in the furnace room, and none was ignited there, except such as was passing through the burners of the gas furnace. The furnace room was walled in with brick on all sides and was located on the outside of the main building adjacent thereto. It was also shown without dispute that the gas pipe which appellant Dill connected with the gas heating furnace extended down through and was embedded in a concrete floor, underneath which there was no cavity; and that the pipe beneath the concrete floor extended through the earth, and along which it was not shown to have been possible for a flame to run to the open space beneath the main building while consuming any leaking gas, and none was shown to be leaking or escaping from this pipe. Therefore, there was no proof on which a verdict against the appellant Dill could be allowed to stand. Moreover, it was shown that the explosion beneath the building could have been attributed to various causes, including the operation of an electric finishing machine used on the flooring, heated wires due to pennies shown to have been placed in the electric meter, and the presence of laborers working about the premises and various other causes. He was in our opinion clearly entitled to the peremptory instruction asked for. In so holding we are not unmindful of the contention that he violated a city ordinance in testing the pipe joints by striking matches and applying the flame thereto, but since no gas escaped from these joints his action in so doing was not the proximate or contributing cause of the explosion. He was under no duty to inspect the gas piping underneath the building. The city ordinances required that the "Fitter" should cause this inspection to be made by the city plumbing inspector in

the presence of the "Fitter," prior to the use of gas in the building, by a test showing that the piping would stand a ten-pound pressure of air for a period of fifteen minutes without a reduction in the pressure; and that before this test is made the "Fitter" should satisfy himself that all the work to be enclosed or concealed is tight. The gas piping referred to in the ordinances is defined as meaning the piping from the inlet to the building to the outlet for appliances. And the ordinances further provide that when such test shall have been made of the gas piping the city plumbing inspector should furnish a certificate showing that the same conforms to the rules and regulations contained in the ordinances governing gas piping, one copy of which should be furnished to the gas company, one to the owner, and one filed with the city clerk. It was further shown that, although it was permissible for the gas meter to be set up at the building, it had been the custom and practice in this and other municipalities that this inspection should be made before the flow of gas was made available from the outside piping into the piping in the building. It necessarily follows therefore that the appellant Dill had a right to assume that the contractor Bassett had caused the gas piping between the inlet to the house and the points where appliances were to be located to be inspected by the city plumbing inspector, and that the proper certificates had been furnished to the gas company and the owner of the building in that behalf, and he was guilty of no negligence in assuming that this had been done and that such gas piping had been found safe and suitable for the inflow of gas.

As to the claim for damages made by the appellee Bassett, the contractor, the requested peremptory instruction should have been granted in favor of both of the appellants. He cannot take advantage of his own gross negligence under the circumstances hereinbefore related and complain of the failure of the appellants to find the hidden danger which his act had proximately and pri-

marily occasioned. Knowing that no inspection of the gas piping installed by him had been made as required by the city ordinances, and that the gas was being made available for the use of the owner who was preparing to move into the building, and also knowing that this uncapped and open pipe was exposed beneath the kitchen flooring, his failure to inform either the gas company, the owner or the appellant Dill that this pipe was still uncapped, he can not be heard to complain of the damages inflicted by the explosion caused as a result of such gross negligence on his part.

On the question of whether the gas company was negligent on the facts and circumstances hereinbefore related, we are of the opinion that as between the owner and the gas company it may be a question for the determination of a jury as to whether the action of the gas company in installing the meter and making the gas available from the outside pipes to the piping on the inside of the building was one of the proximate or contributing causes of the explosion, when such action is considered in connection with the gross negligence of the appellee contractor Bassett. The gas company was not required by the city ordinances to inspect the gas piping within or underneath the building, but it was shown by its former local manager, who was employed in the Town of Brooksville for a period of four years and until six weeks prior to the accident, that it had been the established practice and custom not to connect the gas from the outside pipe line into the inside piping until the certificate of the city plumbing inspector, as to the suitability of the inside piping, had been furnished to the gas company, or at least until it knew that proper inspection had been made and that the piping had been found safe for the prevention of escaping gas. It was also testified by a gas plumber of considerable experience that this was the first time he had known of a meter to be installed before such an inspection had been made by the city plumbing inspector. Also, that it had been the

almost uniform practice of the gas company to have a representative present when the inspection was made by the city plumbing inspector in the presence of the fitter, and to furnish gratuitously the mercury gauge by which such test was made. And although it is true that upon discovering the open pipe in the furnace room the gas company immediately shut off the gas "cock" on the pipe leading to its meter on the day of its installation some two weeks prior to the accident, and thereafter prevented gas from flowing into the pipes within the building, unless it should again be turned on by the use of a wrench by some third party, we have concluded to reverse and remand the case for a retrial as between the owner Cunningham and the appellant gas company on the issue of the alleged negligence hereinbefore discussed; and when there will also remain for determination the question of whether the contractor Bassett was the agent of the owner Cunningham under the facts of the case when by his negligence he furnished the primary proximate cause of the accident, so as to require a mitigation of any damages that may have been contributed to by the alleged negligence of the gas company, and to the extent of the negligence of the contractor in that behalf, this specific question not having been briefed on this appeal; also, the question of contributory negligence of the appellee Cunningham in insisting that the gas be connected and the meter installed before having first been furnished with the certificate of the city plumbing inspector that the gas piping had been duly inspected and tested from the inlet to the building to the appliances, and had been found safe and suitable for such purpose, as provided for in the city ordinances.

The cause is reversed and judgment rendered here in favor of the gas company as against the appellee Bassett, and in favor of the appellant Dill as against both of the appellees, and the cause is remanded for retrial as to the gas company and the appellee Cunningham.

Reversed and remanded accordingly.