MISSISSIPPI PUBLIC SERVICE CO. *v.* CUNNINGHAM.

(In Banc. April 22, 1940.)

[195 So. 472. No. 33817.]

R. H. & J. H. Thompson, of Jackson, for appellant.

Reily & Parker, of Meridian, for appellee.

Argued orally by **J. H. Thompson,** for appellant, and by **Marion W. Reily** and **L. L. Martin,** for appellee.

**McGowen, J.,** delivered the opinion of the court.

This case was before this Court heretofore. The report thereof is to be found in Mississippi Public Service Co. v.

Bassett, 184 Miss. 6, 184 So. 419. It is here again on appeal by the Mississippi Public Service Company from a judgment against it for $2,665 in favor of appellee, J. B. Cunningham.

Originally, as here, the action was for the loss sustained by Cunningham, the owner of the building, and his contractor, Bassett, who constructed it, for negligently connecting the house fittings for gas with the appellant's gas main, thereby causing an explosion of gas within the house which wrecked the house. Cunningham and Bassett sued the present appellant and Dill in one joint suit for $5,000 and recovered jointly a judgment against appellant and Dill for that amount.

On the former appeal, the Court held that the contractor, Bassett, could not recover because of his gross negligence as fitter of the gas pipes within the house, in that he left an open uncapped pipe, concealed beneath the kitchen floor, which the Court then determined permitted the outflow of the gas which exploded.

The Court further held the appellant, there Dill, was not liable because it was not shown by that record that Dill's action in testing the joints of gas pipes with matches or flames proximately caused, or contributed to, the explosion.

As to the Mississippi Public Service Company, the Court reversed and remanded the cause for another trial.

The Court, as to the latter's liability, said [184 Miss. 6, 184 So. 422]: "On the question of whether the gas company was negligent on the facts and circumstances hereinbefore related, we are of the opinion that as between the owner and the gas company it may be a question for the determination of a jury as to whether the action of the gas company in installing the meter and making the gas available from the outside pipes to the piping on the inside of the building was one of the proximate or contributing causes of the explosion, when such action is considered in connection with the gross negligence of the appellee contractor Bassett. The gas company was not

required by the city ordinances to inspect the gas piping within or underneath the building, but it was shown by its former local manager, who was employed in the Town of Brooksville for a period of four years and until six weeks prior to the accident, that it had been the established practice and custom not to connect the gas from the outside pipe line into the inside piping until the certificate of the city plumbing inspector, as to the suitability of the inside piping, had been furnished to the gas company, or at least until it knew that proper inspection had been made and that the piping had been found safe for the prevention of escaping gas. It was also testified by a gas plumber of considerable experience that this was the first time he had known of a meter to be installed before such an inspection had been made by the city plumbing inspector. Also, that it had been the almost uniform practice of the gas company to have a representative present when the inspection was made by the city plumbing inspector in the presence of the fitter, and to furnish gratuitously the mercury guage by which such test was made. And although it is true that upon discovering the open pipe in the furnace room the gas company immediately shut off the gas 'cock' on the pipe leading to its meter on the day of its installation some two weeks prior to the accident, and thereafter prevented gas from flowing into the pipes within the building, unless it should again be turned on by the use of a wrench by some third party, we have concluded to reverse and remand the case for a retrial as between the owner Cunningham and the appellant gas company on the issue of the alleged negligence hereinbefore discussed; and when there will also remain for determination the question of whether the contractor Bassett was the agent of the owner Cunningham under the facts of the case when by his negligence he furnished the primary proximate cause of the accident, so as to require a mitigation of any damages that may have been contributed to by the alleged negligence of the gas company, and to the extent of the

negligence of the contractor in that behalf, this specific question not having been briefed on this appeal; also, the question of contributory negligence of the appellee Cunningham in insisting that the gas be connected and the meter installed before having first been furnished with the certificate of the city plumbing inspector that the gas piping had been duly inspected and tested from the inlet to the building to the appliances, and had been found safe and suitable for such purpose, as provided for in the city ordinances.''

In detailing the facts in the case at bar which are material, we call attention to the fact that the issue was limited, and much that appeared in the former record is absent from this one. Certain ordinances in force in the town of Brooksville, where the house was located (vital as the case is now presented), were as follows:

''Section XVIII; Testing. Before any system of house gas piping is finally put in service it shall be tested by Fitter in the presence of the Plumbing Inspector to insure that it is gas tight. The piping must stand a ten pound pressure of air (equal to that exerted by a column of mercury 20″ high) for a period of 15 minutes without drop of pressure. Before this test Fitter should have satisfied himself that all work to be enclosed or concealed is tight. Testing for leaks by flame is prohibited.

''Gas Company may at its own expense, prior to turning on gas, or at other reasonable times, inspect and test house gas piping systems, appliances and appliance connections to determine if same are installed and maintained in accordance with this gas piping code and may refuse to turn on gas or may cut off gas at any such installation found upon such inspection or test to be not installed or maintained in accordance with this Gas Piping Code.''

Sec. X. ''The meter will in all cases be connected by Gas Company who may refuse to connect to gas piping which does not conform to this Gas Piping Code. *No other person, firm, or corporation shall connect, discon-*

*nect, adjust, alter, or tamper with any gas meter, nor with the connection thereto.''* (Italics supplied.)

We now state undisputed essential facts:

Cunningham, as owner, contracted with Bassett to construct for him a residence. It was to be a lock and key job. This meant that Bassett was to place within the house all fittings for the gas. In this construction and as fitter, he left a gas pipe through which gas would flow, when connected from outside with gas, underneath and against the kitchen floor, and concealed and uncapped. Bassett, the fitter, also left a gas pipe protruding from the concrete floor of the furnace room, plainly to be observed, uncapped. This pipe also was to be connected at the wall of the house at the meter and through which gas would flow when and if connected at the gas meter.

Mrs. Cunningham, the wife of appellee, was of course much interested in this building which she and her husband intended to occupy as their home, and she was invested with authority as his agent to act relative thereto. She was constantly in and about the building and was there on the morning of the day of the explosion, Saturday, February 19th.

Prior to this explosion Mrs. Cunningham, with full authority so to do, went to the office of the appellant and directed its officers and agents to install the meter and connect the gas. The servants of the appellant complied with her order, dug the ditch, laid the pipe from the main in the street to the house, and connected this pipe with the house pipe, then installed the company's gas meter and turned on the gas into the house. The gas meter disclosed to these servants of the company that gas was leaking through the inside pipes into the house. It is undisputed that Mrs. Cunningham was present and knew their purpose to install the meter preparatory to finally servicing the house with gas at that time. When the outside gas pipe had been connected with the pipes within the house, and the meter installed, thereby causing the gas from without to flow through the meter, that meter

disclosed to these servants that a pipe within was leaking gas. They shut or cut off the gas by means of a cock, went over the house looking for the source of the leak, and only discovered the open pipe uncapped in the furnace room with paper wadded in the opening, and, by means of the shutoff cock at the meter, they left the gas effectually disconnected from flowing into the pipes in the house. It required a Stillson wrench or some such tool to turn the gas into the house pipes.

On the night before this explosion, Mrs. Cunningham, by telephone, instructed Dill that she wanted the heating plant installed as they desired to occupy the house the following Monday. Dill and his employees went to Brooksville and proceeded to connect this open pipe with the heating plant. He and his employees, as they pleased, went to the meter and turned the gas on and off through the meter into the house pipes. Some one of them lighted the gas at the proper place, but the flame went out, and with the gas on at the furnace the explosion occurred, greatly damaging the house. Six feet from the furnace there was an opening or vent from the furnace room so as to permit cold air to pass under the house. No explosion occurred in the furnace room. An inspection made by Dill revealed that a copper cent had been substituted for a proper fuse in the electric lighting fixtures, which would cause flame or a spark, which would ignite gas; otherwise, this mysterious explosion is unexplained. The fitter had placed a pipe for gas in the kitchen, and had put the flooring down over this open uncapped gas pipe as effectually concealed as possible in that house. The theory is that when the gas was turned on by Dill it permeated the space beneath the kitchen, and was stored there, and a flame from somewhere ignited it, causing the explosion.

Neither the fitter, Bassett, nor the owner, Cunningham, had ever called on the proper municipal authority for inspection and test of the inside pipes. Nor was any cer-

tificate issued by him or delivered to the appellant, the owner, or Bassett.

As to the custom referred to in the former opinion, the evidence of Leon Bean, official gas tester, is undisputed that he used both methods of testing the pipes—that is, the installed gas meter test and the mercury pressure test—that he used the former test "frequently". On his direct examination, he testified that the gas meter was not installed until after the mercury pressure test and inspection, but on cross-examination he testified that on frequent occasions the tests had been made by putting on the meter first and turning the gas in. The appellee's witnesses testified that gas meters were not customarily installed until after the official inspection and test had been made and certificate issued by the official town inspector. On behalf of the appellant the evidence was that it not only sold gas to consumers, but also acted as fitter in installing the gas pipes within the buildings. When it acted as fitter, it called for and had official inspection and certificate before appellant installed its meter; on the other hand, when another acted as fitter it installed its meter and made the gas connections upon the order of the owner, and assumed that such owner or fitter had procured the inspection test and certificate.

Butts testified that he told Mrs. Cunningham on the day he installed the meter that the pipes in the building were not ready for gas and he had disconnected the connection or cut off the gas. In effect, she at first denied this conversation, but on cross-examination she testified that she did not remember the conversation.

Dill testified that on the day of the explosion Cunningham told him that the furnace pipe was the only gas pipe connection in the house. Cunningham and his wife denied this statement saying that he went to his farm twelve miles away early that morning.

Dill's plumber said that the installed meter at this house indicated to him that the inspection had been had. He said further that when he began work that day no gas

was passing through the meter into the house pipes. Neither Dill nor any of his employees so far as this record shows looked at the gas meter to see whether gas was passing into the house pipes.

An examination of the former opinion convinces us that with Section VIII of the ordinances before the Court at that time, it was of the opinion that the appellant had not violated that ordinance by installing the meter and cutting off the gas, further that the gas company was not under the duty to search for the concealed uncapped pipe.

The case was clearly remanded to permit the appellee to prove, if he could, an established custom not to set or install the meter until proper test and inspection had been made and certified officially.

It appears clearly that this Court did not then have before it, or urged upon it, the above quoted Section X of the ordinances of Brooksville. On the former appeal the ordinance emphasized as having been violated by Dill was one against testing the pipe joints by striking matches and applying the flame thereto, and the Court held that his act in making such test in the furnace room was not shown to have been a proximate or contributing cause of the explosion.

On the whole case we are clearly of the opinion that the appellant was entitled to a peremptory instruction.

The gas company installed its meter and connected its pipes on the outside with the owner's or fitter's pipes on the inside. The meter then disclosed that gas was passing through the meter into the house pipe. This indubitably showed that the house pipe was leaking. Its servants then discovered the uncapped pipe in the furnace room protruding up through the concrete floor. They then made reasonable inspection of the entire house and then, as they had right to do, cut off the gas so that it could not be turned on by any person without the aid of a Stillson wrench or some such tool. This action stated most strongly for appellee did not "finally put in service" the house gas piping upon any fair construc-

tion of such language of this ordinance. Beside that, by the latter part of that section, the appellant was authorized itself ''prior to turning on gas'' to inspect and test the house pipes to determine if those pipes were not installed or fitted in accordance with the city code, then in that event they were authorized to ''refuse to turn on gas or cut off gas at any such installation'' if the house pipes were not properly installed.

Exactly this was done by the gas company. Moreover, when they thus cut off the gas by disconnecting it from the house pipe, it had a right to rely on Section X that no other person (except the gas company) without committing a criminal offense would ''connect or disconnect any gas meter nor tamper with the connections thereto.'' Dill and his servants, acting under his control and personal supervision in the absence of and without the knowledge of the gas company, turned on and off the gas through the meter. Mrs. Cunningham and her husband knew or are charged with knowledge that one pipe in the furnace room was open and uncapped. Dill and his employees knew that fact. They, the owner, and Dill knew that those housepipes were not ready or fit finally for service. The house pipe was to be the conduit through which gas could pass. ''Finally put in service'' means to turn the gas into the house pipe for use by the owner or occupant of the house.

The gas company was not the fitter in this case. The record does not show that Bassett, the contractor, had ever turned over this house to the owner, but Mrs. Cunningham took charge and ordered the gas company to install the meter and Dill to install the furnace. Dill was guilty of negligence, so was Cunningham through his agent and wife. It would not have taken but a moment for Dill to look at the gas meter and discover that he, in violation of the ordinance, was turning gas into that house. The absolute test was before his eyes. Dill was absolved from liability in the former judgment of this Court because Ordinance X was not presented to this

Court as shown by the opinion and briefs as printed in the reports. The appellant here was not required to anticipate or foresee that Mrs. Cunningham would order Dill to connect its property with the gas pipe, and that he would obey her by doing so.

The efficient intervening last contributing proximate cause of this explosion was the joint act of the owner and Dill to which the gas company did not contribute by installing its meter and leaving it unconnected.

The case of Sawyer v. Southern California Gas Co., 206 Cal. 366, 274 P. 544, and other like cases, was decided upon a state of facts entirely different from the case here, and in that particular case no ordinances were involved, and that case is not authority here.

The evidence of Dill's plumber that the meter being set was a signal to go ahead is absolutely nullified by the fact that he found the furnace room gas pipe open and uncapped, and this was direct notice to him of great danger and that the house pipes had not finally been put in service for gas, indeed, that open pipe was a red light of danger to him and all others and if Dill had obeyed the law (or Ordinance X) the agents of the gas company would have been called to connect and turn on the gas which the gas company had the exclusive and sole right to do.

We have considered this case, having constantly in mind the fact that the gas company was selling and delivering natural gas, a highly dangerous substance, to the public and to Cunningham, and the law is: "When a gas company has notice that gas is escaping in the premises of a patron, the company must either shut off the gas or remedy the defect, and one or the other must be done as quickly as practicably possible. Natural gas is an extraordinarily dangerous element, and those who are authorized to furnish it for use among the public are charged with a degree of care and skill commensurate with that danger; and in such cases as in all cases of known danger, 'the sacredness of life and limb is the declared basis

upon which the law imposes a duty of care.' Green v.
Maddox, 168 Miss. 171, 180, 149 So. 882, 151 So. 160,
161.'' See Mississippi Power & Light Company v. Mc-
Cormick, 175 Miss. 337, 166 So. 534, 535.

Bassett, the contractor, was grossly negligent in leav-
ing the kitchen and furnace pipes uncapped, and the ap-
pellee apparently took charge of the house in that known
condition as to the furnace, knowing the house pipes
were not prepared for final service of gas, and Dill knew
and saw these facts. They had no certificate from the
official gas pipe tester, and if they had procurred one they
had no right to turn gas into this house without the
knowledge and consent of the gas company.

The evidence of Bean, the municipal gas pipe tester, a
witness for appellee, shows that he followed no fixed
custom, so that theory of custom cannot now be relied on
by the appellee. 17 C. J., Sec. 7, page 449; Sec. 91, pages
552, 553; Sec. 12, page 452. Aside from Bean's testimony,
the evidence was in hopeless conflict as to custom, not
only in Brooksville but in adjacent towns and cities.

There is no hint of evidence in this case that others
were accustomed to turn on gas at the meter.

Reversed and judgment here for appellant.

**Ethridge, J.,** delivered a dissenting opinion.

I am unable to agree with the majority opinion in this
case. Under the ordinances of the city, quoted in the
majority opinion, it was the duty of the Mississippi Pub-
lic Service Company to obtain the certificate of the city
gas inspector, or else to have him present when it under-
took to install the meter, as shown by this record.

While gas is a commodity of value and convenience, it
is at the same time an exceedingly dangerous instrumen-
tality, and persons furnishing gas for domestic consump-
tion must use the highest degree of care in safe-guarding
those using it, and their property, from damage.

In the present case the meter was installed, connecting the outer pipes with those within the house; and on making the test according to its custom, the gas company discovered that something was wrong with the pipes, causing a leak, and the gas was turned off, but the outer and inner pipes were not disconnected. It was the duty of the gas company, on being informed of this condition, to notify the city gas inspector to inspect the pipes in the house, in accordance with the plans of the owner or contractor for placing them. Under the ordinance it had no right to install the meter until the city officer selected for the purpose had made the necessary test and inspection. If it did not itself choose to make the inspection, it should have disconnected the outer pipes from the inner pipes by removing the meter until the proper city officer had made the inspection, and certified to the gas company and the owner that the plumbing and fixtures were ready for the gas to be turned on. Of course, had it made an inspection it would have been responsible for the negligence in doing so, if negligence, in fact, there was.

The ordinance requiring inspection by city officers is a reasonable police regulation, and the gas company should have seen to it that the ordinance was complied with. It could not have been compelled to install the meter and furnish gas service in the absence of such official inspection. But having itself undertaken to make the inspection, the gas company was under the duty, on discovering a leak in the pipes, to make a full examination, or else to call on the city officer, and the contractor, to be present at the installation of the meter, and to make the necessary inspection. The action of the gas company in the matter was insufficient to insure safety, in my judgment; for it did not disconnect the gas at the main but left it in such condition that a plumber or other person familiar with the method of turning on and off gas with a wrench could turn it on, thus endangering life and property.

Under the ordinance the gas company is given the right to inspect gas pipes and fixtures, at its own expense, before turning on the gas; or at any other reasonable time to inspect the pipes, appliances and connections, in order to determine whether they are installed and maintained in accordance with the gas piping code of the city; and it may refuse to turn on or cut off gas at any such inspection or test, according to the conditions revealed by such inspection.

In all cases the meter is required to be installed by the gas company, and not by another. The gas company may refuse to connect the gas pipes should they not conform to the requirements of the gas piping code. It was clearly the duty of the gas company, when called upon to furnish the gas connection, and install the meter, to require the certificate of the city officer that the piping was properly done, and that it was ready for installation of the meter. This was for the special purpose of insuring the safety of the premises. The provision in the ordinance that, ''No other person, firm or corporation shall connect, disconnect, adjust, alter or tamper with any gas meter, or with any connection thereto,'' does not save the gas company from liability where, as in the present case, it installed the meter without the proper inspection and test first being made, and without the certificate to that effect of the gas inspector of the city. The fact that the ordinance prohibits another person from doing what was done subsequent to the installation of the meter, would make it an act of negligence on the part of such person, but would not save the gas company from liability for having improperly left the gas meter installed despite the fact that the required inspection had not been made.

The majority opinion underscores this last quoted provision; but I fail to see that it saves the situation for the gas company, since it left the meter connecting the inner and outer pipes when they were not properly prepared for connection, thus making it possible for a plumber or contractor to turn the gas on—the meter apparently being

placed ready for service. The testimony shows that the contractor understood that the piping was ready for the gas to be turned on.

I do not think that the request of Mrs. Cunningham for the gas service exonerates the gas company from liability for its improper installation of the meter. It is clear from the evidence that neither the gas company nor the city inspector gave her notice of the defect in the piping. She testified directly that she was not given such notice, and the verdict of the jury shows that they accepted her version of the matter. Furthermore, the contractor who was installing piping for her was not her agent in judging of the fitness of the connections and piping for the installation of the gas meter. He had to make certain fittings, and was dealing with her at arm's length in the matter. She had a right to assume that the gas company had complied with the ordinance, and had the inspector present, and did whatever else was proper.

All disputed questions of fact, of course, are resolved in favor of Mrs. Cunningham by the verdict of the jury. A trial by jury is one of the esteemed rights of a citizen, and the trial judge has a very important and powerful influence. He has heard the witnesses and observed the proceedings in court, including the demeanor of the parties; and so is in a better position than this Court to judge of the fairness and weight of the evidence, and of the trial in general. A citizen should not be deprived of his right to trial by jury by this Court, unless the verdict is so obviously contrary to the overwhelming weight of the evidence as to indicate bias, prejudice, passion or corruption.

I think, therefore, that the judgment should be affirmed.

**Smith, C. J.**, concurs in this opinion.