STURGIS, Judge
(dissenting).
E. P. Clark, an employee of the City of Ocala, died as the result of injuries suffered from an explosion and fire that occurred in one of the city’s sewer lift and pumping stations when he and a fellow employee were engaged, in the course of employment, in making a routine inspection of the station.
Two negligence actions were brought against Ocala Gas Company, Inc., the ap-pellee: one by decedent’s widow in her own right; the other in her relation as executrix of his will; and were consolidated for trial, resulting in jury verdicts for the defendant appellee. Motions for a new trial were denied and final judgment entered for the defendant. Plaintiffs appeal and the cases are also consolidated on the appeal.
The complaint in each case charged that the explosion and fire resulted from defendant’s negligence in permitting liquid petroleum gas, a commodity sold and distributed by it, to escape from its distribution lines. Defendant’s initial answers (1) denied the alleged negligence and (2) affirmatively charged that decedent was guilty of contributory negligence. After the jury was sworn defendant was permitted to file another affirmative defense, as follows :
“That plaintiff’s decedent assumed the risks of injury by explosion which he suffered in that he knew of the perilous condition from which the explosion resulted, appreciated, or should have appreciated the danger thereof, and voluntarily exposed himself thereto.”
I am persuaded that the critical point for determination by this court is whether the trial court committed prejudicial error in denying a motion of the plaintiffs, made at the conclusion of all the evidence, having for its object the withdrawal from the jury of the issue of assumed risk, as presented by that belated defense, predicated on the insufficiency of the evidence to make out a prima facie defense in that particular. I am of the opinion that the motion was well taken and that it was material error to deny it.
It is elemental, of course, that the judgment of the trial court is clothed with a presumption of validity and that appellee is entitled to the benefit of every fact and reasonable inference favorable to affirmance. However, that presumption and benefit fall in the face of material error; and it is my opinion, the correctness of which I will attempt to demonstrate, that the proofs in support of the defense of assumed risk are so inadequate, so lacking in several essential factors upon which the applicability of the doctrine depends, that it was necessarily prejudicial to submit that issue to the jury for consideration in making up its verdict. Aside from what I consider to be a complete failure of the evidence to support the issue made by that affirmative defense, I feel that it confused the issues to the extent that the jury erroneously conceived that it was called on to determine, as between the defendant gas company and the City of Ocala, decedent’s employer (not a party to the suit), which was guilty of the greater degree of negligence and, on that predicate alone, answerable for the tort; that it was thus led to ignore its proper function of determining, under the issues that properly remained in the case, first, whether the defendant gas company was guilty of any actionable negligence and, secondly, if so, whether the defense of contributory negligence had been established as a bar to recovery for *395 defendant’s negligence. I suggest that a careful analysis of the excerpt from the record, as quoted in the majority opinion, is more indicative of a state of confusion in the minds of the jury than it is indicative of a conclusion that no negligence whatever existed on the part of the defendant, proximately resulting in the injury.
Such analysis also reflects that the charge given by the court emphasizes a factor with which a jury in such a case is only indirectly concerned, that is, the negligence of a third party. However astute the defense may be in labeling a third party as the tort-feasor, and undertaking to convince the jury to that effect, the real issue at point of law always remains, was the defendant guilty of the negligence charged ? The sum and substance of the evidence relied on by the gas company to establish the defense of assumed risk is to the effect:
First. That some years prior to the years during which the decedent worked for the city in the capacity of an inspector of the lift stations, he had been City Manager of Ocala and had some sort of supervisory authority over gas distribution lines of the city, from which it is insisted that he is charged with some sort of knowledge that the particular defect was likely to occur in the lines bought some years later by the defendant from the city. I reject that premise as patently erroneous in the absence of a showing, non-existent here, that he actually knew or should have known of the particular defect and its probable consequence.
Second. That decedent was acquainted with the fact that more than one year prior to the fatal explosion there occurred several explosions in the same lift station, from which the jury was entitled to draw the inference that he knew or should have known that another explosion was likely to occur therein. I do not think this inference is available in the light of testimony to the effect that certain mechanical changes designed to remedy the defect were made subsequent to the prior explosions, that similar inspections were made by the decedent over a course of one year following the prior explosions, with no untoward event or suggestion that another would occur; and, of compelling importance, a total lack of evidence indicating that the prior explosions were caused by liquid petroleum gas. Thus there is no basis for the implication that he had knowledge of such prior explosions having been caused by the escape of liquid petroleum gas, the type distributed by defendant.
Third. That it was established that gas had been escaping in the vicinity of the lift station for several weeks prior to the fatal explosion, from which the inference is attempted to be drawn that the decedent should have known of that fact. While it is true that there was testimony of disinterested witnesses to the effect that the odor of such gas could be smelled at times during that three-week period at a house across the street and up a hill from the lift station, there is not one jot of evidence that such fact was made known to the decedent. Moreover, the evidence is uncontested that such fact was brought home to the defendant, that it investigated the reported leaks of its gas and came to the conclusion and announced that none existed.
Fourth. That some type of electrical equipment was recommended to be installed in the lift station following the prior explosions, which apparently would have been of a more safe type than that actually installed, that the decedent authorized installment of the inadequate equipment, and that he therefore assumed the risk of the explosion. It is trite to argue that he assumed the risk of an explosion from a source with which he was not acquainted. The foregoing evidence and lack of evidence is essential to be borne in mind in considering whether a prima facie defense of assumed risk was made out by the proofs in this case.
The rule is elemental that where there is a total absence of evidence from which it can be reasonably inferred that the injured *396 party knew or had reason to know of the immediate presence of the specific dangerous instrumentality — in this case liquid petroleum gas- — the doctrine of assumed risk does not apply. To elaborate:
The doctrine rests upon the consent, express or implied, of the injured person to relieve the party otherwise chargeable of an obligation of conduct toward him, and to accept the chance of harm from a particular risk. Consent by express agreement is generally rtpheld unless the injured party is at an obvious disadvantage in bargaining power. It is an affirmative defense, and is never established unless it is shown by the evidence that the party against whom it is asserted had actual knowledge and appreciation of the risk and voluntarily chose to encounter it.
The term “assumption of risk” has been used by the courts in several different senses, and the distinctions seldom are made clear:
(a) In its primary sense it means that the plaintiff expressly consented to relieve the defendant of an obligation of conduct toward him and take his chance at injury from a known risk. In that perspective the defendant is simply under no legal duty to protect the plaintiff.
(b) In another sense it means that the plaintiff, having knozvledge of the risk, has voluntarily entered into some relation with the defendant necessarily involving the risk, and thus tacitly or impliedly agrees to take his own chances, e. g., spectators entering a baseball park may be regarded as consenting that the game may proceed without taking special precautions to protect them from being struck by the ball. In this aspect also, the legal result is that the defendant is under no duty.
(c) Another situation is presented when the injured party, azvare of a risk created by negligence of the defendant, proceeds voluntarily to encounter it, e. g., the workman who continues to work at a machine, after knowledge that it has become dangerous and that his employer has not repaired it, is not necessarily negligent in doing so, for his decision may be compatible with reason, and he may even act with usual caution because he knows the danger. However, under the policy of the common law governing intentional torts, to the effect that no wrong is done to one who consents, recovery is barred where the damage results from a risk accepted and brought upon one’s self.
(d)A fourth situation is that in which plaintiff’s conduct in encountering the known risk is itself unreasonable. In that aspect there is negligence on the part of both parties and plaintiff is barred from recovery, not only by his implied consent to take the chance, but also by the policy of the law which denies him the right to impose upon the defendant a loss for which his own fault was partly responsible. In such cases both assumption of risk and contributory negligence are available as defenses. For a broader discussion of the subject see: Bohlen, Voluntary Assumption of Risk, 1906, 20 Harv.L.Rev. 14, 91; Paton, Some Problems Relating to Volenti Non Fit Injuria, 1940, 9 Brook. L.Rev. 132; Keeton, Assumption of Risk and the Landowner, 1942, 20 Tex.L.Rev. 562; Keeton, Personal Injuries Resulting from Open and Obvious Conditions, 1952, 100 U.Pa.L.Rev. 629; James, Assumption of Risk, 1952, 61 Yale L.J. 141.
The question of whether the proofs in the case on review warranted the issue of assumed risk to be submitted to the jury requires an examination of the law governing the duty of the defendant as a dealer in and distributor of liquid petroleum gas. A higher degree of care and vigilance is required in dealing with a dangerous agency than in the ordinary affairs of life and business which involve little or no risk of injury to persons or property. Those dealing with explosive gases come within the first category and are required not only to see to it that the distribution pipes and fittings are of good material and workman *397 ship and laid in the ground at suitable depth, with skill and care, but also to maintain an efficient system of inspection, oversight and superintendence, and to promptly repair the pipes when they become unsound, whether caused by their own fault or not. 28 C.J. 591, 592, 38 C.J.S. Gas § 42, pp. 733, 734. That principle is followed by this Court in Russell v. Jacksonville Gas Corp., Fla.App.1960, 117 So.2d 29.
Knowledge, actual or implied, of the immediate presence of the specific dangerous instrumentality is essential to application of the assumption of risk doctrine. The record in this cause will be searched in vain to discover the slightest competent evidence from which to conclude that there was communicated to the deceased any happening, fact or circumstance by which reasonably to place him on notice that liquid petroleum gas was escaping or ever had escaped from its distribution lines in such manner that it might have permeated the sewer lift station. For aught that appears to the contrary, the agency causing the prior explosions was methane, common sewer gas. Such search will also fail to disclose that on the day of the accident there was any reasonable likelihood, from circumstances that were known or should have been known to the decedent, that he would subject himself to any unusual danger in going about his duty to inspect the sewer lift station in the same manner as the evidence shows he had done without incident almost daily, oftentimes several times each day, for more than a year prior to that day.
As previously stated, the record is devoid of any evidence that the prior explosions were caused by the ignition of gas of any kind escaping from defendant gas company’s transmission lines. In the case of Kibele v. City of Philadelphia, 105 Pa. 41, a gas distributor sought to escape liability on the premise that the plaintiff’s sewer was defective and untrapped, and that plaintiff was thereby guilty of contributory negligence. In rejecting that argument, the court said:
“But this matter has nothing at all to do with the case. If he had a bad or imperfect branch sewer, he must run the risk of the deleterious effects of sewer gas, for that must be expected in a common sewer, but he had no right to expect that it would be a conduit for illuminating gas; as well might he expect that it would be made a storehouse for gunpowder.”
After the defendant in the instant case was informed, within three weeks prior to the fatal explosion, of an apparent escape of its gas in the vicinity of the lift station, it conducted what it insists was an extensive investigation, from which it concluded and announced that no leaks existed in its system of distribution lines serving that vicinity. However, it did not so much as notify the deceased of the reported leaks, nor did it cut off the flow of gas through its pipe lines serving the area. The evidence is conclusive, notwithstanding, that promptly following the fatal accident a long-existing leak, capable of producing the fatal explosion, was found to exist in defendant’s distribution line at a point in close proximity to the sewer lift station; that the leak was so located that the escaping liquid petroleum gas, heavier than air, would flood into the sewer line and thence into the subject lift station.
Russell v. Consumers Power Co., 287 Mich. 154, 283 N.W. 11, 12, was a case in which the right of recovery turned upon whether the defendant gas company had notice, actual or constructive, of escaping gas and failed to make reasonable investigation. The evidence in that case was that upon investigation defendant’s service man concluded and announced that the gas in plaintiff’s home was sewer gas, as compared to defendant’s determination and announcement in the instant case that no gas was escaping. In affirming judgment for plaintiff the Michigan court said:
*398 “The mistake of the service man and consequent cessation of investigation does not release defendant from liability, for it is bound by what, in reason, he should have discovered, and consequent measures which should have been taken to protect endangered persons.”
A delay of several weeks in making repairs after notice of the fact of a leak in a gas pipe or meter will render the company liable for injuries caused by gas escaping from such leak. McClure v. Hoopeston Gas & Elec. Co., 303 Ill. 89, 135 N.E. 43, 25 A.L.R. 250; Annotations 25 A.L.R. 271, 29 A.L.R. 1252, 27 A.L.R. 4-89, and 90 A.L.R. 1086. Likewise, a delay of several weeks by a gas company in making an investigation and repairing its pipes, after notice of a leak in the vicinity of the plaintiff’s shade trees, has been held ground for recovery for the killing of the trees. Annotation 25 A.L.R. 271.
If a gas company knows, at the time it turns on the gas, or thereafter becomes aware that there are defects in the pipes, or if the company is in the possession of facts that would suggest to a person of ordinary care and prudence that the pipes are leaking or are otherwise unsafe for the transportation of gas, it is under a duty to make such an inspection or investigation as a person of ordinary care and prudence, similarly situated and handling such dangerous agency, would make to ascertain the safety of the pipes, before it furnishes or continues to furnish gas through them. If the gas company fails to do this and furnishes or continues to furnish gas through the pipes, it does so at its own risk and becomes liable for injury resulting therefrom to the person who is without fault. Similarly, a gas company knowing that the service line, which it is under no duty to repair or maintain, is rusted and corroded to such extent as to permit gas to escape, must cause the line to be repaired by the person who has the duty of repair or must shut off the gas at the street. Annotation 21 A.L.R. 271.
In Mississippi Public Service Co. v. Cunningham, 189 Miss. 179, 195 So. 472, it is held that after notice of escaping gas it is the duty of the gas company to shut off the gas and remedy the defect. In any event there is a corresponding duty to notify those exposed to danger. Neither was done in the cases on review. How then can it be said that decedent assumed the risk?
Aside from the fact that there is no positive evidence that liquid petroleum gas produced the prior explosions, I think they are entirely too remote in point of time (more than one uneventful year) to afford a reasonable basis upon which to impute to the deceased knowledge that such a dangerous instrumentality — liquid petroleum gas— was present in the station at the time of the fatal accident.
As pithily stated in Bartholf v. Baker, Fla., 71 So.2d 480, 483:
“Voluntary exposure is the bedrock upon which the doctrine of assumed risk rests. Appreciation of the danger is an essential to the defense of assumption of risk, or of contributory negligence as is knowledge of the condition which creates the peril.”
In affirming City of Williston v. Cribbs, Fla., 82 So.2d 150, 151, our Supreme Court said that its conclusion was not reached solely by indication of the principle that the defenses of contributory negligence and assumption of risk should be resolved by the jury, as was held in Wilson & Toomer Fertilizer Co. v. Lee, 90 Fla. 632, 106 So. 462, and Atlantic Coast Line R. R. Co. v. Gary, Fla., 57 So.2d 10, but further:
“It is founded upon our inability to find in the record conclusive evidence from which the inescapable inference [i. e. only permissible reasonable inference] must be drawn that appellee’s husband assumed such an insoucient attitude toward his own safety as to cause this court to determine as a matter of law that the deceased was shown, under the facts and circum *399 stances of this case, to have been guilty of contributory negligence or that he assumed the risk of the injury which caused his death.” (Emphasis added.)
In Byers v. Gunn, Fla.1955, 81 So.2d 723, the Supreme Court clearly enunciated the rule and stated the factors governing the affirmative defense under discussion. Following the rule laid down in Cooney-Eckstein Co. v. King, 69 Fla. 246, 67 So. 918, which case cited with approval Tinkle v. St. Louis & San Francisco R. R. Co., 212 Mo. 445, 110 S.W. 1086, the Florida Supreme Court in City of Jacksonville Beach v. Jones, 101 Fla. 96, 131 So. 369, 133 So. 562, said that the doctrine of assumed risk pertains, among other instances, to an act done so spontaneously by the party against whom the defense is invoked that he was a volunteer, and any bad result of the act must be attributed to an exercise of his free volition, instead of the conduct of his adversary; that the word “assumption” imports a contract, or some kindred act of an unconstrained will; that whenever a man does anything dangerous, he encounters the risk, but it by no means follows that, legally speaking, he assumes the risk.
It is impossible for me to find support from the record for the conclusion of the majority that the jury in this case did not seriously consider “the defense of assumption of risk.” What charges and defenses, may it be asked, did they seriously consider? I am equally nonplussed to understand what is meant by the conclusion of the majority that the evidence permits the inference that the decedent “acquired intimate knowledge as to the operation of the city sewer system.” Does this mean that he should have been aware of the particular leak, the existence of which was not brought to his attention; the leak which the defendant asserts it did not find after being alerted to it and after making a close inspection to locate it? Such occult power of an appellate intellect to probe the mysteries of the jurors’ minds and to measure the intimate attainments of that of the decedent is an awesome thing, to which most of us, including the writer, can only aspire and aspiring suspire.
Feeling that the disposition of this case hy the majority is in direct conflict with the applicable rules of law governing the doctrine of assumed risk as laid down by the within cited decisions of our Supreme Court on the subject, I respectfully dissent.