## Soles *v.* The People's Natural Gas Company, Appellant.

*Negligence—Gas companies—Explosion of gas—Contributory negligence.*

1. Where a gas company turns on gas in a house in response to an application from the property owner or his tenant, the company may fairly regard such an application as an affirmative assertion by the

owner that the interior system of pipes, constructed and maintained by the owner, is sufficiently secure to permit the gas to be introduced with safety.

2. In such a case where the gas company has no control over the pipes nor is in any way responsible for their condition, and it turns on the gas by the direction of the property owner or his tenant, and then discovers the existence of a leak, it performs its full duty if it immediately shuts off the gas and gives notice to the owner or his tenant. If an explosion results afterwards from the gas that had escaped, the company will not be liable for the loss.

Argued April 12, 1911. Appeal, No. 45, April T., 1911, by defendant, from judgment of C. P. No. 4, Allegheny Co., First Term, 1908, No. 957, on verdict for plaintiff in case of Margaret Soles v. The People's Natural Gas Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Reversed.

Trespass to recover damages for injuries to a house resulting from an explosion of gas. Before CARNAHAN, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $533. Defendant appealed.

*Error assigned* among others was in refusing binding instructions for defendant.

*Stephen Stone*, with him *W. A. Stone* and *Christy Payne*, for appellant.—Nearly all of the cases in Pennsylvania, which have to do with gas explosions, and in fact, in all cases in which the gas company has been held responsible, refer to those cases where the gas was allowed to escape through some of the pipes, either the main or service pipes, the property of the gas company. The theory underlying these cases is, of course, very patent, for the gas companies alone have control of such class of pipes. However, when an explosion occurs through failure to have the pipes in a house in a proper condition to receive the gas, the dicta is in the cases referred to, that the gas company can in no sense be held responsible: Koelsch v. Philadelphia Co.,

152 Pa. 355; McKenna v. Bridgewater Gas Co., 193 Pa. 633; Lodge v. United Gas Imp. Co., 209 Pa. 553; Hartman v. Citizens' Nat. Gas Co., 210 Pa. 19; Oil City Fuel Supply Co. v. Boundy, 122 Pa. 449; Chouteau v. St. Louis Gas Light Co., 47 Mo. App. 326; Schmeer v. Gas Light Co., 65 Hun, 378 (20 N. Y. Supp. 168); Schmeer v. Gas Light Co., 147 N. Y. 529 (42 N. E. Repr. 202).

It was the duty of the owner and the tenant to see to it that the pipes were in good order, and this accident having been caused through the failure of the owner and the tenant to have their pipes in proper condition to receive the gas, the appellant cannot be held liable in damages for the result of the explosion: Smith v. Pawtucket Gas Co., 24 R. I. 292 (52 Atl. Repr. 1078, 96 Am. St. Rep. 713); Bartlett v. Boston Gas Light Co., 117 Mass. 533; Krzywoszynski v. Consolidated Gas Co., 38 N. Y. Supp. 929; Flint v. Gloucester Gas Light Co., 85 Mass. 343; King v. Consolidated Gas Co., 85 N. Y. Supp. 728.

*Joseph F. Mayhugh*, for appellee.—The case was for the jury: Shirey v. Consumers Gas Co., 215 Pa. 399; Apfelback v. Consolidated Gas Co., 204 Pa. 570; Devlin v. Beacon Light Co., 198 Pa. 583; Kane v. Phila., 196 Pa. 502; Spear v. R. R. Co., 119 Pa. 61; Baker v. W. & C. Nat. Gas Co., 157 Pa. 593; McCoy v. Ohio Valley Gas Co., 213 Pa. 367; Olive Stove Works v. Ft. Pitt Gas Co., 210 Pa. 141; Heh v. Consolidated Gas Co., 201 Pa. 443.

OPINION BY HEAD, J., October 9, 1911:

The plaintiff brings this action to recover damages for the partial destruction of her building resulting from an explosion of natural gas. The building was arranged to accommodate two tenants. The plaintiff herself had formerly occupied one portion of it, but at the time of the explosion was residing in a separate dwelling erected on the same lot. The entire building first mentioned had been piped by the owner so that its occupants could use natural gas for fuel or light or both, and gas had been thus used by

the occupants. Each side of the building was provided
with a separate service pipe and gas meter so that the re-
spective tenants could control the disposition and use of
the gas.

For some time prior to the explosion one side of the prem-
ises had been unoccupied, and at the time it became va-
cant the meter had been removed from the basement of that
portion of the building and the gas shut off at the street
main. A few days prior to October 25, 1907, the plaintiff
had secured a new tenant, and on that day this tenant no-
tified the defendant company of her occupancy and that
she desired to have the gas turned into the premises. At
about six o'clock in the evening of the day mentioned two
of the defendant's employees came to the house, bringing
with them a new meter of standard design. Having duly
set the meter in the place prepared for it and connected it
with the service pipe and the house system, they turned
on the gas at the street line as they had been requested to
do. The gas in the street main was under a pressure of not
more than six ounces. Had the system of pipes inside the
house been free from leaks, it is manifest that only a suffi-
cient amount of gas would pass through the meter to fill
the house pipes with the same pressure of gas already men-
tioned. By watching the dial attached to the meter for
that purpose, it almost immediately became manifest to
the defendant's employees that there was a leak some-
where in the house pipes. They at once shut off the gas at
the meter and gave notice of the fact that there was a leak
in the house pipes. According to the estimates given by
the witnesses for the plaintiff, the time that elapsed be-
tween the opening of the street main and the shutting off of
the gas did not exceed about two minutes.

Although the defendant was in nowise responsible for the
condition of the house pipes and owed the plaintiff no duty
either to find the leak or repair it, one of its employees vol-
unteered to try and locate it. Having been provided with
a lantern, at his request, he went to the second floor and
at once discovered that a cap which should have pro-

tected an opening in the pipe had been removed. He then went away, leaving instructions that the gas should not be turned on until the house leak had been closed. Neither of the defendant's agents went to the third floor or had any knowledge of conditions there. Neither the plaintiff's tenant nor anyone about the premises opened any windows or took any precaution to free the premises from the gas that had necessarily escaped during the brief period of time that elapsed between the opening of the street main and the closing of the gas at the meter in the manner described.

Thus far there can hardly be said to be any conflict in the testimony. Just how much gas actually did pass through the meter in the time indicated, the testimony leaves in serious doubt. The size of the pipe and the pressure of the gas are not matters in controversy. On the day following the accident it appears that the meter dial registered 140 feet. The great weight of the testimony tends to show that, given the size of the pipe, the pressure of the gas, and taking the estimate of time furnished by the plaintiff's witnesses, no such amount of gas could have passed through the meter in that brief period. But if the verdict involves a finding by the jury that the meter was not touched by anyone after the defendant's servants left it, and that, as a consequence, the amount of gas found to be registered must have passed through before they shut it off, we cannot say as matter of law, that such finding is without supporting evidence and therefore the plaintiff is entitled to the benefit of it.

Some little time after the happening of the occurrences thus noted—the exact time being left in doubt by the testimony—one of the occupants of the other side of the house went to his room on the third floor and struck a match. An explosion, and probably two explosions followed, resulting in the injury to the building for which the plaintiff now seeks to recover. To establish her right, her testimony must tend to show some negligent breach of duty on the part of the defendant or its servants which was the proxi-

mate cause of the injury. It is not contended by evidence or argument that there was any defective condition in the system owned or controlled by the defendant. It is clear enough that in opening the street main and permitting the gas to flow through the meter into the house pipes of the plaintiff, the defendant was but obeying the direction of the plaintiff's tenant and doing what was its duty under the law to do. It had no control over the manner in which the house should be piped, nor was it in any way responsible for the condition in which those pipes were maintained. Their maintenance was the duty of the plaintiff, and she must bear the consequence of any failure to keep them in fit condition to perform the service for which they were designed.

Whilst we have no decisions of the appellate courts of this state in which this precise question has been adjudicated, the conclusion is so manifestly supported by reason that its soundness cannot be doubted. And where, as here, the gas was turned on in response to an application from the property owner or her tenant, the defendant could fairly regard such application as an affirmative assertion by the owner that the interior system of pipes, constructed and maintained by the owner, was sufficiently secure to permit the gas to be introduced with safety.

There are at least two cases outside of Pennsylvania in which the appellate courts have recognized the correctness of the principle we have stated. In Chouteau v. St. Louis Gas Light Co., 47 Mo. App. 326, the court said: "It appears that changes may be made and are constantly being made in the arrangement and connection of gas pipes in the interior of buildings without notifying the gas company. So long as the service pipes are not interfered with, the gas company exercises no supervision. The service pipes lead from the street main into the building and connect with the meter. Beyond that point the gas company assumes no control." In Schmeer v. Gas Light Co., 147 N. Y. 529, the defendant company had turned the gas into a large building occupied by many separate ten-

ants. It had done nothing to secure information as to the condition of the pipes in the building. The plaintiff occupied a room in the building, had made no request that the gas be turned on, and was ignorant of the fact that it had been turned on. As the result of an explosion, under these conditions, the plaintiff's son was killed. The court of appeals, in an opinion concurred in by four of its members, three dissenting, held, that under the conditions stated, the jury should have been permitted to determine whether or not the defendant had exercised reasonable care. But even in that case, in considering the situation disclosed by the record in the present case, the court said: "We are not here dealing with the case of an owner or of a tenant who had made application for a meter, and who might be said to have thereby waived any further examination."

As already stated, the explosion occurred, not on the side of the building in which the defendant had shortly before introduced the gas in the manner stated, but on the other side, occupied by an entirely different tenant. That side of the building had its own independent system of pipes, and as to their condition the testimony is silent. Assuming, however, that the jury could properly have found that the gas which actually exploded came from the side of the house into which it had just been introduced, and assuming further that the gas which thus found its way through the building passed through the defendant's meter during the brief period while the defendant's agents were controlling its flow, nevertheless, as we view it, the testimony unerringly points to the conclusion that the proximate cause of the injury was the leaky condition of the house pipes, which it was the duty of the plaintiff to maintain in proper condition. In our judgment, when the defendant's servants had promptly discovered the existence of a leak and then shut off the gas and given notice to the plaintiff or her tenant, its duty was fully performed. It was not bound to take any steps to discover the location of that leak. That was the manifest duty of the plain-

tiff or of such skilled persons as she would select for the purpose. Nor was it the duty of the defendant to go through the house opening doors and windows to free the house from the gas which had escaped from the pipes through the leak referred to. And especially would this be true in the light of the admission made by the plaintiff's tenant herself that she was familiar with the use of gas and well acquainted with the fact that it was explosive and dangerous. On this point we quote briefly from her testimony: Q. "You knew it [gas] was a dangerous thing to handle? A. Oh, yes, I knew it was dangerous. Q. You knew it would explode? A. Certainly I knew it would explode. Q. You heard Mr. Stewart say there was a leak, did you? A. Yes, sir. Q. And you didn't go upstairs to open any windows or anything yourself? A. No, sir, I had been in town that day, and I had just buried my father and I had a good bit of trouble on my hands," etc.

But it is argued the learned trial court was right in submitting to the jury for determination, as a material fact under the evidence, the question whether or not the defendant's servants permitted more gas to flow through the meter than was necessary in order to determine the existence of the leak. We can discover nothing in the evidence upon which a verdict against the defendant on this ground could stand. It is first of all to be remembered that the defendant's agents fairly had the right to assume in the outstart that the plaintiff's system of house piping was so installed and maintained that it would receive the gas and hold it securely. The evidence furnishes no measure by which the jury could determine how much time persons of ordinary skill and prudence would have consumed in detecting the fact of a leak, and their finding that the time shown by the testimony to have been occupied was too great seems to have been the purest conjecture. Nor is there anything to warrant the assumption that if the gas admitted had been something less in quantity the explosion that followed would have been practically less injurious to the building. Certain it is that the plaintiff's neg-

lect of duty in keeping the pipes within the house in proper repair was responsible for the admission of a considerable quantity of the gas that passed through the meter before it was shut off. This gas, when mixed with air, as the testimony shows, forms a dangerous explosive compound. Even viewing the case of the plaintiff in its most favorable light, it seems impossible to avoid the conclusion that she at least did her full share in bringing about the introduction into her own house of the agent that subsequently wrought the injury and in a material way contributed to that injury.

Upon the entire record as it stood at the conclusion of the trial, we are of the opinion the learned court should have affirmed the first point submitted by the defendant praying for a directed verdict, or, failing in that, should thereafter have granted the defendant's motion for judgment n. o. v.

Judgment reversed and the record is now remitted to the court below with direction to enter judgment for the defendant on its motion for judgment n. o. v.