Mississippi Valley Gas Co. *v.* Goudelock.

No. 39576          May 2, 1955          79  So.  2d 718

*Wright, Overstreet & Kuykendall,* Jackson; *Brewer & Brewer, Howard G. Woodward,* Clarksdale, for appellant.

*Roberson, Luckett & Roberson,* Clarksdale, for appellee.

ARRINGTON, J.

The appellee, William O. Goudelock, brought suit against Harry D. Kantor and Phillip Kantor, doing business as Harry D. Kantor and Son, and the Mississippi Valley Gas Company in the Circuit Court of Coahoma County for injuries received on December 21, 1953, in an explosion at a house being constructed by the Kantors for sale to the plaintiff in the City of Clarksdale, Mississippi. Prior to the trial, a non-suit was taken as to the Kantors upon the payment of $6,000.

The cause proceeded to trial against the appellant gas company and judgment was rendered in favor of the appellee in the sum of $35,000, from which judgment the appellant appeals to this Court.

Harry D. Kantor and Phillip Kantor were in the construction business in Clarksdale, doing business as Harry D. Kantor and Son, hereinafter referred to as Kantor. Kantor and appellee entered into an agreement whereby Kantor was to construct and sell to appellee a house in the Greenacres Subdivision in the City of Clarksdale. At the time of the explosion on December 21, 1953, Kantor was the owner of the house and lot wherein the explosion occurred, and was in sole and exclusive control of the work being done on the premises. On the date of the explosion, the house was nearing completion, with the exception of some interior painting, finishing work and the installation of certain appliances. Due to the cold weather prevailing at the time, the painters could not work in the house and Kantor told the appellee to have the gas turned on. On Monday, December 14, appellee made application for natural gas service. This application for meter connection had to be made by the owner, who was to be the customer of the appellant gas company. The plumber had completed the installation of the gas piping in the house, and on Tuesday, December 15, requested of the city an inspection of the piping in accordance with the municipal gas code of the City of Clarksdale. On this same day, the inspection was made

and the piping found to meet the requirements of said code, and, accordingly, the city issued to the gas company and Kantor a certificate of such inspection. On this date, the appellant's employee, Hubbard, with his helper Carter, went to the premises to install the meter, but found that the gas line had not been laid from the main to the point where the meter was to be placed. On December 16, this service line was laid. On the following day, Thursday, the 17th, Mr. Hubbard, with his helper Carter, returned to the premises and installed the gas meter which connected the service line with the gas piping in the house. Upon installing the meter, he observed that gas was passing through the meter, there was a clicking sound, indicating to him that gas was flowing through the meter and that something was wrong with the piping in the house. Hubbard then turned off the gas at the meter with a Stillson wrench. He then went around the house, and finding no one on the premises, left. Hubbard did not notify Kantor or the appellee that he had discovered that gas was passing through the meter, which indicated something was wrong with the piping in the house.

The evidence on behalf of appellee shows that Mr. Drew, the plumber who installed the pipes in the house for Kantor, installed a heater in the house on Friday or Saturday, December the 18th or 19th, and at that time no gas was flowing into the house—no gas service was being rendered. A Mr. Bell did some finishing work in the utility room where the explosion occurred on Friday, December 17, and testified that he smelled no gas while he was working. On Sunday, December 20, the painters worked all day on the interior of the house. On Monday, about 10 o'clock A. M., the appellee and his son went to inspect the house that he had agreed to purchase. He entered through the front door; the heater was on and some men were working; he passed through the house and went to the utility room, and there he attempted to light a cigaret. Upon striking his lighter, the ex-

plosion occurred and he was severely burned. It developed that some time after the city inspection and before the time of the explosion, someone had removed the cap off of the gas pipe in the utility room, and some unknown person or persons had turned the gas on at the meter. Mr. Drew, the plumber, was working nearby, heard the explosion, and went to the scene immediately thereafter. After helping the appellee in a car to go to the hospital, he went into the house and noticed that the furnace was burning and he cut it off; he then went to the utility room and saw the gas pipe open and burning. He then obtained a heavy pair of pliers and turned the gas off at the meter.

The negligence charged against appellant was that the appellant negligently and carelessly turned on the gas meter when its servants knew, or should have known, that gas was escaping somewhere within the interior of the residence; that the gas company negligently failed to cut off said gas meter after knowing that gas was escaping and that appellant failed to notify or warn any person that gas was escaping in the house.

Appellant first contends that it was entitled to a peremptory instruction in that the appellee failed to prove any negligence on its part contributing or proximately causing the explosion which resulted in the unfortunate injuries to appellee. With this, we agree. In view of our conclusion, it is unnecessary to consider appellant's other assignments of error.

Section 8 of the Municipal Gas Code of the City of Clarksdale provides: "It shall be unlawful for any person, excepting an authorized agent or employee of a person engaged in the business of furnishing or supplying gas and whose service pipes supply or connect with the particular premises, to turn on or reconnect gas service in or on any premises where and when gas service is not at the time being rendered.

"It shall further be unlawful to turn on or connect gas on or in any premises unless all outlets are properly

and securely connected to appliances or capped or plugged with screwed joint fittings."

Section 10 of said Code provides, in part, as follows: "(a) When the final piping inspection has been made, if the installation is found to comply with the provisions of this code, a certificate of inspection shall be issued by the department having jurisdiction; failure to perform required steps shall not invalidate if effectually issued.

"(b) A certificate or notification of such final piping inspection shall be issued to the gas company supplying gas to the premises who may thereon rely.

"(c) It shall be unlawful for any person furnishing gas to turn on or cause to be turned on any gas meter or meters until such certificate or notification of inspection as herein provided shall have been issued."

Sections 11(f) and 12(f) provide: "1. Before turning gas under pressure into any piping, the person in charge shall assure himself that there are no openings from which gas can escape."

Section 12(f) 3 provides in part that when a leak is discovered in the house piping at the time the meter is installed that "the meter cock should then be turned off until the necessary repairs have been made, after which the above tests should be repeated."

It is argued by appellee that the appellant was negligent in installing the meter and connecting the service line to the gas piping of the house without first ascertaining that all outlets were plugged or else all appliances were securely connected. With this we cannot agree. Answer enough would be that before installing the meter appellant had a right to rely upon the city's certificate certifying that the piping in the house complied with the city ordinance. Sec. 10(b). Appellant's action in so installing the meter in nowise contributed to or proximately caused appellee's injury, inasmuch as after turning the gas on, Hubbard immediately turned the gas off

upon discovering that gas was passing through the meter and that something was wrong with the gas piping of the house. This occurred on Thursday, December 17, and the explosion which caused appellee's injury did not occur until Monday, December 21. Mr. Hubbard testified that he turned the gas off, and insofar as the record shows, appellant had nothing further to do with the premises until after the explosion. Kantor had exclusive control of the premises and all work done thereon. The appellant was not responsible for the piping of the house. It is undisputed that appellant's servant, Hubbard **turned the gas off at the** meter on Thursday, December 17. This is corroborated by Mr. Drew, appellee's witness, who testified that the gas was not on the day he installed the wall furnace, either Friday or Saturday, subsequent to the installing of the meter by appellant on Thursday. Nothing to the contrary appears in the record. Moreover, proof was made by a qualified expert to the effect that from the volume of gas that had passed through the meter from the time some one turned on the gas until the explosion, that the gas had been turned on between seven and eight o'clock A. M. on Sunday, December 20, which was the same day the painters worked in the house.

By turning off the gas at the meter, appellant complied with the duty imposed upon it by the gas code of the City of Clarksdale, which provides in Sec. 12 (f)3 that upon the discovery of a leak when installing the meter that "the meter cock should then be turned off until the necessary repairs have been made . . ." Appellant had the right to rely upon Section 8 of the code, which provides that no person other than appellant would turn on the gas at the meter, and was not required to anticipate or foresee that someone would unlawfully turn on the gas in violation of Section 8. Mississippi Public Service Co. v. Cunningham, 189 Miss. 179, 195 So. 472.

Appellant did all that was required of it in its operations at the premises in question. It installed its meter in reliance upon the city certificate of inspection, and upon discovering that gas was somehow escaping, turned the gas off at the meter. This, without more, did not proximately cause the injury to the appellee. The wrongful and unlawful turning on of the gas at the meter was the efficient intervening last contributing proximate cause of the explosion. To hold otherwise would make a distributor of natural gas an insurer of its product once the gas piping on the premises was connected to the main line— to hold it responsible for any damage caused by its product regardless of the fact that the damage was proximately caused by intervening forces and agencies over which it had no control. Such is not the rule in Mississippi. Mississippi Public Service Co. v. Cunningham, supra, was decided by this Court in 1940. It involved a factual situation very similar to the instant case, and city ordinances of the same kind and character as those enacted by the City of Clarksdale. This Court there held that the leaving of the gas line connected but cut off at the meter after the discovery of a leak was not negligence on the part of the appellant in that case. Since the rendition of that decision, thirteen years have elapsed wherein the rule announced in the Cunningham case could have been changed by appropriate legislation. No such action was taken by the City of Clarksdale, its ordinances placing upon the gas distributor only the duty to cut the gas off at the meter in the event a leak was discovered. This Court is cognizant of the fact that the appellant was selling and delivering natural gas, which is a highly dangerous substance. However, the law is, as stated in the Cunningham case, supra, "when a gas company has notice that gas is escaping in the premises of a patron, *the company must either shut off the gas or remedy the defect, and one or the other must be done as quickly as practicably possible.*

Natural gas is an extraordinarily dangerous ele-

ment, and those who are authorized to furnish it for use among the public are charged with a degree of care and skill commensurate with that danger; and in such cases, as in all cases of known danger, 'the sacredness of life and limb is the declared basis upon which the law imposes a duty of care. Green v. Maddox, 168 Miss. 171, 180, 149 So. 882, 151 So. 161.' See Miss. Power & Light Co. v. McCormick, 175 Miss. 337, 166 So. 534, 535." (Emphasis ours).

The soundness of the rule expressed in the Cunningham case, supra, as applied to this case is emphasized by the fact that Justice Ethridge's dissent was based primarily upon the fact that there the gas distributor installed its meter without first obtaining a certificate of inspection from the city as required by ordinances involved. In this case, appellant first acquired and relied upon such a certificate; appellant cut off the gas immediately, as it was required to do, once it became known that gas was escaping. Under the law and the circumstances of this case, this is all that was required.

Mrs. Goudelock testified, and the jury had a right to accept her testimony although it was disputed, that on Thursday, December 17, she telephoned the gas company and asked if gas service had been installed in the house so that the painters could do interior painting, and a lady employee of the gas company stated that gas would be connected the next afternoon; on the next day, Mrs. Goudelock again telephoned appellant and was told by an employee of the gas company that gas had been turned on and that the house could be heated so that the painters could work. Whether or not Mrs. Goudelock and her husband did or did not believe that the gas had been turned on is immaterial; the efficient intervening last proximate cause of the explosion and resulting injury to the appellee was the unlawful act of some person in

turning the meter cock allowing the gas to flow into the house.

Reversed and judgment here for appellant.

*Roberds, P. J.,* and *Hall, Kyle* and *Gillespie, JJ.,* concur.