## Mercer County Housing Authority v. Mercer Gas Light & Fuel Co.

*Nathan Routman* and *B. H. Marks*, for plaintiffs.

*Martin E. Cusick, William J. Joyce, Albert E. Acker* and *John V. Wherry*, for defendants.

RODGERS, P. J., April 22, 1957.—This matter comes before the court on a motion for judgment on the pleadings filed on behalf of defendant Mercer Gas Light & Fuel Co.

In deciding this matter, the court must assume facts and inferences as they appear in the pleading, in the light most favorable to plaintiff. We will not consider matters extraneous to the pleading. On this basis, we

will consider that the Mercer County Housing Authority, on January 30, 1953, entered into contracts for the construction of a multiple Public Housing Project in the Borough of Mercer. The project was to consist of five buildings, containing 30 apartments. The buildings were substantially completed on December 4, 1953, when defendant gas company turned on the gas from its main line, permitting it to flow to a shut off at the meter but short of the interior lines of the building without making any inspection of the meter connection or the interior lines.

An additional act was necessary to open the shut off and allow the gas to enter the interior lines.

On December 5, 1953, an explosion took place in the middle apartments of building no. 5, causing considerable damage to the property of plaintiffs.

The explosion was due to leakage of gas from a loose cap at the end of the gas line which was to serve a gas range in the middle apartment of building no. 5 and from a defective gas line between the meter and the furnace. These items were both on the interior lines, installed by defendant Renick. Plaintiff also alleges that defendant was negligent in furnishing and permitting the installation of its gas meter through which gas could flow to interior lines of building no. 5 without making the installation or supervising the same. There is, however, no allegation that there was any defect in the meter or its installation.

In a brief to this court, plaintiff argues strongly that the gas company is guilty of negligence in turning on the gas "into the interior of a building without ascertaining from the plumber the availability of the line to receive gas", and repeats this assertion of fact on many other occasions in the brief. We think that it should be made clear that from this court's view, there is no allegation in the pleadings which supports the inference

that the gas company turned the gas into the interior lines. We believe that they only support the inference that the company turned the gas from its main lines into the service line to the shut off at the meter or immediately beyond the meter.

We believe that defendant has fairly stated the question before the court: May a gas company be held negligent in failing to test the interior gas pipelines within a building on the customer's side of the meter before permitting gas to be introduced in the service line leading from the curb box to the meter?

If this were not a "new construction job", the matter would without question be controlled by previous appellate decision. Our Supreme Court has held many times that there is "a distinction between the responsibilities of a distributor of natural gas in those cases where the leak is in the lines of the company . . . and where the leak is in a line installed, controlled and maintained by the consumer or patron. In the first situation the rule is 'that natural gas companies are held to a degree of care which is commensurate with the dangerous character of the agency which is handled. The measure of care is not that of an insurer to everyone who sustains loss by reason of gas escaping and exploding, but it is liable for an explosion where it knew or by the exercise of ordinary care should have known of the defect in its pipes or mains'. . . . A gas company has not performed its full duty if it merely installs proper lines and fixtures, but it is required to maintain them. This entails inspection from time to time and the company must be on the lookout for conditions incident to natural wear and tear.

"As to conditions arising from defects in the lines of consumers, the responsibilities of the gas company are different for there it is the duty of the consumer to see that his lines are maintained in serviceable condition. The company knows that it is dealing with a

dangerous agency and if it knows or should have known that the consumer's lines are not safe it is its duty to require the lines to be repaired or else to shut off the gas at the curb": Stephany v. Equitable Gas Company, 347 Pa. 110, 113.

Plaintiff concedes that if this were a used building they would have no cause of action, but contends that:

(1) The only thing which prevents liability in the used building cases is that the gas company has a right to presume that the lines have been used in the past with safety and that a fact which is once in being is presumed to continue, and contends that this argument has no validity here because there has been no previous use on which to base a presumption.

(2) The high degree of care to which the gas company is committed in the handling of the gas in its lines should be extended to the interior lines of a new building because the danger involved in dealing with gas is great and the burden which would be placed on the company by requiring them to test interior lines before making gas available to them is incurred.

(3) A proper application of our law to the effect that "the company knows that it is dealing with a dangerous agency and if it knows or should have known that the customer's lines are not safe it is its duty to require the lines to be repaired or else to shut off the gas at the curb", (Stephany v. Equitable Gas Company, 347 Pa. 110-113), as applied to new construction, would hold that the company when making gas available to be turned into main lines should know that the lines may not be safe and therefore they should not be permitted to assume that they are safe.

We do not say here that the company may assume that the lines are safe. We do hold that they have a right to assume that users of new lines will determine their condition before using them. Plaintiff contends that there is a very simple method of testing interior

lines which should have been used by the gas company prior to turning on the gas from the main line to the meter. If this is correct, it must also be true that this device was available to the other professional builders involved here who could just as reasonably be expected to make use of it before turning gas into the lines. We believe that plaintiff is arguing for an extension of liability beyond that previously expressed by our law and we find nothing in our Pennsylvania cases, or in the equities of the situation, which would justify this extension. We believe this case is governed by the thinking of the Supreme Court in the case of Greed v. The Manufacturers' Light & Heat Company, 238 Pa. 248, 251. There, the court said that the gas company:

". . . had nothing to do with the installation of the gas pipes. They were placed in the building by the owner or tenant of the property and the duty of the gas company was to supply gas to the occupants when requested. It had not installed the pipes; it had no control over them, and was in no manner responsible for the condition in which they were to be maintained. That responsibility rested exclusively upon the owner or tenant of the house; and when Mrs. Dager asked that a meter be set in the apartment which she and her husband had leased, the defendant company was warranted in assuming that the interior system of pipes was sufficiently secure to permit the gas to be introduced with safety".

The attitude of the Superior Court of Pennsylvania is set out in Soles v. The People's Natural Gas Company, 48 Pa. Superior Ct. 84, 88, where the Superior Court said:

"To establish her right, her testimony must tend to show some negligent breach of duty on the part of the defendant or its servants which was the proximate cause of the injury. It is not contended by evidence or argument that there was any defective condition in the

system owned or controlled by the defendant. It is clear enough that in opening the street main and permitting the gas to flow through the meter into the house pipes of the plaintiff, the defendant was but obeying the direction of the plaintiff's tenant and doing what was its duty under the law to do. It had no control over the manner in which the house should be piped, nor was it in any way responsible for the condition in which those pipes were maintained. Their maintenance was the duty of the plaintiff, and she must bear the consequence of any failure to keep them in fit condition to perform the service for which they were designed.

"Whilst we have no decisions of the appellate courts of this state in which this precise question has been adjudicated, the conclusion is so manifestly supported by reason that its soundness cannot be doubted. And where, as here, the gas was turned on in response to an application from the property owner or her tenant, the defendant could fairly regard such application as an affirmative assertion by the owner that the interior system of pipes, constructed and maintained by the owner, was sufficiently secure to permit the gas to be introduced with safety."

In Mississippi Valley Gas Company v. Goudelock, 224 Miss. 161, 79 So. 2d 718, the gas company had received a request for meter connection from the owner and also received a certificate of compliance with the Municipal Gas Code from the city but upon installing the meter, the gas company's agent observed that the gas was actually passing through the meter, and "that something was wrong with the piping in the house." The agent then turned off the gas at the meter. "He then went around the house, and finding no one on the premises, left." The agent did not notify the owner of the house or plaintiff who was the perspective purchaser that he had discovered anything wrong with the

piping in the house. Sometime after that, some unknown person turned on the gas at the meter.

A section of the Municipal Gas Code, there in force, made it unlawful for any person except an authorized agent of a gas company to turn on or reconnect the gas service. That court held that the ". . . appellant [Gas Company] was not responsible for the piping of the house. It is undisputed that appellant's servant turned the gas off at the meter on Thursday, December 17th . . . Appellant had the right to rely upon Section 18 of the code, which provides that no person other than appellant would turn on the gas at the meter, . . ."

The court held that the providing of the gas service to the meter was not the proximate cause of the injury of plaintiff and that the wrongful and unlawful ". . . turning on of the gas at the meter was the efficient intervening last contributing proximate cause of the explosion. To hold otherwise would make a distributor of natural gas an insurer of its product once the gas piping on the premises was connected to the main line—to hold it responsible for any damage caused by its product regardless of the fact that the damage was proximately caused by intervening forces and agencies over which it had no control. Such is not the rule in Mississippi. Mississippi Public Service Co. v. Cunningham, [189 Mississippi 179, 195 Southern 472, 477] was decided by this court in 1940. It involved a factual situation very similar to the instant case, . . . This Court there held that the leaving of the gas line connected but cut off at the meter after the discovery of a leak was not negligence on the part of the appellant in that case."

While we do not have the Mississippi Ordinances or any counterpart involved in this action, it seems clear to this court that the gas company is in the business of supplying gas, not in the plumbing business; that they would have a right to assume that no one would turn

on the gas into the interior lines of a building without first satisfying themselves that such lines were properly installed. It does not require a statute of the legislature to provide such a standard. An additional weakness of this case is the fact that we do not know who turned the gas into the interior lines and on whose instructions they operated. We do not feel that it would be proper to extend a rule of liability to a new situation where that new situation has not been clearly delineated by the pleading. This gas, as far as we know from the pleadings, may have been turned on by an unknown trespasser.

### Order

And now, April 22, 1957, the motion of defendant for judgment on the pleadings is granted and the prothonotary is directed to enter judgment in favor of the Mercer Gas, Light & Fuel Company and against plaintiff.

### Exception

And now, April 22, 1957, to the foregoing order of court, counsel for plaintiff excepts and, eo die, a bill of exceptions is sealed for plaintiff.